W. D. McRae *v.* Briney Smart *et al.*

(*Nashville.*    December Term, 1907.)

1. **SPECIFIC PERFORMANCE.** Evidence showing patentable
   invention substantially completed when half interest was
   assigned.

In a suit for specific performance of a contract in which de-
fendant agreed to give complainant a half interest in a patent
to be obtained covering an invention, the evidence stated and
appearing in the record is held to be sufficient to show that
the invention was substantially completed when the contract
was made.    (*Post, pp.* 416, 417, 419-427.)

Numerous cases in other jurisdictions cited in the opinion, on
pages 426, 427.)

2. **SAME.** Of contract of sale or assignment of interest under
   invention before patent.

A written or oral contract of sale or assignment of a certain
interest in an invention expected to be patented is valid, and
may be specifically enforced.    (*Post, pp.* 422-428.)

Cases cited and approved:    Gayler v. Wilder, 10 How., 477;
Hapgood v. Rosenstock (C. C.), 23 Fed., 86; Cook v. Electric
Co. (C. C.), 118 Fed., 45; Nesmith v. Calvert, 1 Woodb. & M.
(U. S.), 34 et seq., Fed. Cas., No. 10123; Binney v. Annan,
107 Mass., 94; Somerby v. Buntin, 118 Mass., 287; Maurice v.
Devol, 23 W. Va., 247-255.

3. **SAME.** Sufficient description of patentable invention in con-
   tract of sale of half interest therein to authorize specific
   performance.

An invention proposed to be patented is sufficiently described
to authorize the specific performance of a contract by the in-
ventor to give complainant a half interest in an invention
described in the contract as "a device to dispense with the

link motion on any reversible engine by the adoption of a reverse lever to take the place of apparatus controlling said link motion on any reversible engine" especially, when considered in connection with the stipulation of counsel that "the device about which this suit is brought, and which is the subject-matter of the alleged contract, is patentable and valuable, and is very valuable." (*Post, pp.* 427, 428.)

4.  **SAME.** Not refused for want of mutuality in contract assigning interest in an invention, with reciprocal obligations, when.

A contract in which the defendant, an inventor, agrees to give the complainant a half interest in a patentable invention completed by defendant, in consideration of which complainant agreed to supply the tools, etc., necessary to model the invention, and to furnish all necessary money to obtain the patent shows mutual and reciprocal obligations to be assumed by the parties, so that specific performance thereof would not be refused for want of mutuality. (*Post, pp.* 416, 417, 428.)

5.  **SAME.** Same. Of assignment of interest in a completed patentable invention will not be refused as requiring personal services.

Such contract as that stated in the preceding headnote was, in effect, an assignment of an interest in a completed patentable invention which was intended to be patented, and was not an agreement for personal services, so as to prevent the specific performance thereof. (*Post, pp.* 416, 417, 428.)

6.  **SAME.** Suit for, is not premature where defendant denies complainant's right to interest in invention before patent, when.

Where the defendant, the inventor, had repudiated his agreement, based upon sufficient consideration, to give the complainant a half interest in an invention to be patented, and had denied his rights thereunder, complainant's suit brought for specific performance of the agreement was not premature, though the invention had not been patented. (*Post, pp.* 416-418, 420, 421, 428, 429.)

McRae v. Smart.

Cases cited:    McCall v. McCall, 1 Tenn. Chy., 500; Pritchard v. Kirkman, 2 Tenn. Chy., 300.

7. **INVENTIONS.** Subsequent assignment to one with knowledge of rights of prior assignee is void.

Where the defendant, the inventor, agreed, for a sufficient consideration, to give complainant a half interest in an invention to be patented, his subsequent wrongful transfer of such interest to another, with a knowledge of complainant's rights, was void. (*Post*, *p*. 429.)

8. **SPECIFIC PERFORMANCE.** Complainant must perform, or offer or be willing to perform the contract, as a condition precedent to relief.

One seeking specific performance of a contract must show, as a condition precedent to obtaining relief, that he has done or offered to do, or is willing to do, all the essential and material acts required of him by the agreement at the time of commencing the suit, and also that he is ready and willing to do all such acts as shall be required of him in the specific execution of the contract according to its terms.   (*Post*, *p*. 430.)

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —JOHN ALLISON, Chancellor.

A. G. EWING, JR., for complainant.

W. D. COVINGTON, T. M. STEGER, and WM. A. CROSTHWAIT, for defendants.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

This is a bill to enforce the specific performance of the following contract:

"Be it known that Briney Smart, party of the first part, and W. D. McRae, party of the second part, both residents of Nashville, Davidson county, Tennessee, have this day covenanted and agreed with each other that they will abide by the following contract, to wit:

"Said party of the first part agrees and here gives to the said party of the second part one-half interest in patent covering an invention completed by said party of the first part, one complete half of entire patent which he had a good right to convey; that is, a device to dispense with the link motion on any reverseible engine by the adoption of a reverse lever to take the place of apparatus controlling said link motion on any reversible engine.

"In consideration of the above, said party of the second part agrees to supply said party of the first part all necessary tools with which to properly model, including one 4½ Barnes foot power lathe and chuck for same, free of all cost to him, the same to pass to said party of the first part in full ownership when terms of this contract are completed. Said party of the second part further agrees to furnish all necessary money to obtain patent and all expense incident thereto.

"We further covenant, each with the other, that we will, ourselves and our heirs and assigns, protect and defend the articles agreed hereto, and that, in case of sale of said patent, both parties must consent.

"In witness whereof, we have hereunto set our hands this 21st day of Feb., 1905.

> "BRINEY SMART.
> "W. D. McRAE.

"Witness: T. H. LOVE."

Defendants in their answer resist the enforcement of said contract upon the following grounds:

"Defendant Smart admits that he made the alleged contract with the complainant. The terms and conditions are clear and plain. This contract complainant failed and refused to perform. He generally expressed a willingness to perform his part of the contract, but never would do it. Defendants Barbour and McKissick had nothing to do with the making of the contract, and knew nothing about it except as appears on its face. All the defendants deny that there was any conspiracy with each other or with others to defeat and defraud complainant out of his rights and interest in the alleged invention.

"It is true defendant Smart now refuses to carry out his part of the contract, but his refusal was caused by the failure and refusal of complainant to perform his part of the contract. Complainant wants a half interest in said invention without doing what he agreed to do.

"Complainant's failure to perform his part of the contract is the cause of all the trouble, and now, since he has found out that defendant Smart can get financial

aid elsewhere, he now claims that he has done all he agreed to do, which he knows is untrue. Defendants deny complainant's right to a specific performance of the contract. Complainant may now be ready, as he alleges, to perform his part of the contract; but he is now too late."

John Barbour and George McKissick were also made defendants to the original bill, and an injunction was sought restraining them from attempting to defraud complainant out of his rights in said contract. On July 24, 1905, and after some proof had been taken, a supplemental bill was filed against the defendant to the original bill, and also against the Briney Smart Inventing & Manufacturing Company, a corporation, William Royster, Young E. Redmond, John Beal, Scott W. Crosthwait, and William A. Crosthwait; all being negroes.

The allegations of the supplemental bill reaffirm the original bill, and also seek to enjoin the defendants from acquiring an interest in said invention which would in any way affect complainant's rights formerly acquired in said contract. Proof was taken, upon consideration whereof the chancellor dismissed the original and supplemental bills, and complainant appealed. The court of chancery appeals reversed the decree of the chancellor, and pronounced a decree in favor of the complainant for the full relief sought by the bill. Defendants appealed to this court, and have assigned errors.

An analysis of said contract will show that Briney

Smart on his part "agrees and herein gives to W. D. McRae, party to the second part, one-half interest in a patent covering an invention completed by said Briney Smart, one complete half of entire patent which he has a good right to convey; that is, a device to dispense with the link motion on any reversible engine by the adoption of a reverse lever to take the place of apparatus controlling said link motion on any reversible engine."

The complainant, McRae, by the terms of said contract was onerated with the obligation, first, to supply necessary tools with which to supply a model, including the Barnes foot power lathe and chuck, the full ownership of which was to pass to defendant Smart when the contract should be completed; second, to furnish all necessary money to obtain a patent and all expenses incident thereto. It will thus be perceived that there were mutual and reciprocal obligations imposed upon the respective parties by the terms of this contract.

The court of chancery appeals reports on the controverted questions of fact as follows:

"Defendant Briney Smart insists that complainant, McRae, failed and refused to perform his part of the contract, and that on account of said breach defendant now refuses to carry his part of the contract. We find that McRae did furnish (he made arrangements for it to be done) all necessary tools with which to prepare model, including one 4½ Barnes foot power lathe and chuck for same. He made arrangements with the com-

pany to fill any order, and to let defendant Smart have anything he desired, and he would guarantee its payment. The defendant Smart knew of this arrangement, and made a bill for tools, amounting to $86.36, which was paid by complainant, and there is no testimony to sustain the contention that McRae ever refused to help him. No demand was made upon McRae for money, and it seems Smart was satisfied so long as he could procure the necessary tools and material to use in finishing the model.

"A *caveat* was desired in order to preclude any infringement upon defendant's design, and after consultation about the matter complainant McRae opened correspondence with patent attorneys at Washington, D. C. It required $15 to pay the government fee, and $5 for other fees.

"This was the first and only demand for money made by Smart upon the complainant. The wife of the complainant started $20, being four $5 bills, to patent attorneys at Washington, but they reported that only $15 was received. How the deficit of $5 occurred does not appear. Smart, upon being notified, sent the additional $5, but gave no notice to complainant.

"Complainant called Smart up over the telephone and inquired about the *caveat*, whether or not it had been issued. He was informed by Smart that he (complainant) was 'counted out' and had no further interest in the matter, because he was asked to send $20 and had only sent $15, and that he (Smart) had to furnish

$5.   Smart declined to further discuss matters and re-
ferred complainant to his (Smart's) attorneys."

Again the court of chancery appeals says:

"About this time a corporation was formed under the
laws of the State of Tennessee, called the Smart Manu-
facturing & Inventing Company, with a capital stock of
$130,000. One object of this corporation was to take over
this invention of Briney Smart and the letters patent
in course of issuance, and (as the record indicates) with
a knowledge of McRae's rights.   His name had been
erased, and that of one of the defendants (Barbour) in-
serted, as we have stated; and this for the purpose of
counting out McRae and in utter disregard of the con-
tract existing between him and the defendant Smart.
The other defendants named are the incorporators of
the Smart Manufacturing & Inventing Company."

Again the court of chancery appeals reports:

"We find that complainant did perform his part of
the contract until he was counted out, and was willing
to still do so, and that the defendant breached the con-
tract."

This is a substantial statement of the findings of the
court of chancery appeals, from which it appears that
court had resolved all the controverted questions of fact
in favor of the complainant, McRae.   That court accord-
ingly decreed that complainant is rightfully entitled to
one-half interest in said invention, and the court directs
that, when the patent issues, the same shall be issued
to complainant for one-half interest therein.

It is said on behalf of appellant that this contract cannot be enforced for the reason:

First.    There was no invention in existence and no patent had been applied for at the time of the making of the contract and the filing of the bill.    The contention is that on February 21, 1905, when the contract was made, and on May 3, 1905, when the bill was filed, defendant Smart was at work on an idea which he hoped to develop into an invention which, in the event he was successful, he would seek to have patented.

It is further said the contract sued upon did not transfer to McRae the invention, or any interest in it, but that it was an agreement to transfer a half interest in a patent when obtained.

We are of opinion this contention is unsound.    In *Cook* v. *Sterling Electric Co.* (C. C.), 118 Fed., 45, the question presented was in respect of the validity of an oral agreement for the sale of an invention after application for a patent and before it was granted.    It was said:

"The court entertains no doubt that an oral agreement for the sale of an invention, founded on a sufficient consideration, made pending an application for a patent, is valid in equity and constitutes a good defense to a suit brought by such vendor after he has obtained a patent for the invention.    Before the patent is granted, the sale of the inchoate right to the exclusive use of an invention is governed by the general principles of the law relating to bargains and sales.    The case of *Gayler*

v. *Wilder,* 10 How., 477, 13 L. Ed., 504, decides that the inchoate right of an invention may be sold and assigned before a patent therefor has been granted.

"In that case it was true the assignment is in writing; but, unless a right of property existed in the invention before the patent was issued, the assignment would have been invalid, for want of a subject-matter on which it could operate.

"In this country, where the principle of the patent law is recognized, where an invention is regarded as property which may be set apart for a person's own exclusive use, why is it not assignable without an enabling statute? What reason can be assigned why an invention which is regarded as property shall not be transferable like other property, there being nothing in the statute to prohibit it? In my opinion it can be done.

"An oral assignment or sale of an invention before the issuance of a patent, therefore, is valid, and invests the purchaser with the equitable title; and the inventor, who, after such assignment or sale, obtains a patent, holds the legal title in trust for the owner of the equitable title.

"Such an agreement may be specifically enforced in equity upon sufficient proof thereof."

In the case of *Nesmith* v. *Calvert,* 1 Woodb. & M. (U. S.), 34 et seq., Fed. Cas. No. 10123, the court said:

"The oral agreement of the parties, alleged in the bill, that the invention and all letters patent which should be issued or granted therefor should be their joint property,

in proportion specified, stands upon the same basis as if it had been in writing. Such a grant, though made before the issuance of a patent, is valid, and capable of being enforced in equity by compelling an assignment and accounting and such other relief as the circumstances require."

*Somerby* v. *Buntin,* 118 Mass., 287, 19 Am. Rep., 459 :. In this case it was also held:

"A contract may be made to convey a future invention, as well as a past one, and for any improvement or maturing of a past one."

In *Hapgood et al.* v. *Rosenstock et al.* (C. C.), 23 Fed., 86, it was said:

"Although equity does not, as a general rule, decree specific performance of contracts relating to personal property, this is because ordinarily, adequate compensation in a case of a breach may be obtained by way of damages at law. It is apparent that such a consideration cannot apply to an agreement like the present (the sale of a patent), because from the nature of the subject-matter it would be impossible, in many cases, to ascertain the damages which licensees might sustain by reason of being deprived of their rights to use an invention. Agreements for the assignment of a patent, and for delivery of chattels, which can be supplied by the vendors alone, and for renewals of leases, are among those which will be specifically enforced. *Binney* v. *Annan,* 107 Mass,. 94, 9 Am. Rep., 10; Fry's Specific Performance, section 33."

In the case of *Maurice* v. *Devol,* 23 W. Va., 247-255, the court said :

"When an invention has an actual or potential existence, an interest in such invention may for a valuable consideration be assigned to a third person. When so assigned, such person will have such interest in the patent afterwards issued to secure such invention. But it is insisted that the subject of the contract was nothing more than an intangible, undeveloped mechanical hypothesis, a vague conception, unsusceptible of any identity at that time, and by no possible means to be discriminated from any other idea, present or future, in the mind of Murphy. Such immateriality is not capable of being sold and delivered.

"The witnesses to the contract say that the contract recites that Murphy had filed *caveats* to protect his invention. He could not have done that if it was a mere intellectuality."

It is said, however, that at the time the contract was made and when the bill was filed there was no invention in existence, and no patent had been applied for; that the defendant Smart was simply at work on an idea which he hoped to develop into an invention.

It appears, however, from the record, that when the written contract was signed on February 21, 1905, application had been made for a *caveat.*

On November 6, 1904, the following writing was given by Mr. McRae to Smart:

"In regard to the invention of Briney Smart, I will

and do promise that I will not reveal to any one anything pertaining to said invention.

"[Signed]    W. D. McRae."

Smart, in a latter written February 19, 1905, stated: "Complete model is about completed."

We think it quite certain, from the facts disclosed in this record, that the mechanical device for which the defendant Briney Smart was seeking a patent had progressed further than a mere intellectuality and had assumed such a substantial form that a model had been made and a *caveat* applied for.

The mechanical device sought to be patented is clearly defined in the contract as "a device to dispense with the link motion on any reversible engine by the adoption of a reverse lever to take the place of an apparatus controlling said link motion on any reversible engine."

The application for the letters patent has been made under serial No. 255757. Moreover, the contract between these parties expressly recited:

"Said party of the first part agrees and hereby gives the party of the second part one-half interest in patent covering an invention completed by said party of the first part."

This language imports on its face that the invention has already been completed, and excludes the contention of counsel for defendant that at that time complainant only had an idea which he hoped to develop into an invention. *Dalzell* v. *Dueber Mfg. Co.,* 149 U. S., 320, 13 Sup. Ct., 886, 37 L. Ed., 749; *Rathbone* v. *Orr et al.,* 5

McRae v. Smart.

McLean, 131, Fed. Cas. No. 11585; *Duke* v. *Graham* (D. C.), 19 Fed., 647; *Burr* v. *De La Vergne,* 102 N. Y., 415, 7 N. E., 366; *Appeal of Reese,* 122 Pa., 392, 15 Atl., 807; *Watson* v. *Deeds,* 3 Ind. App., 75, 29 N. E., 151; *Hartshorn* v. *Day,* 10 How., 211, 15 L. Ed., 605; *Spears* v. *Willis,* 151 N. Y., 443, 45 N. E., 849; *Hepworth* v. *Henshall,* 153 Pa., 592, 25 Atl., 1103.

The case of *Kennedy* v. *Hazleton,* 128 U. S., 667, 9 Sup. Ct., 202, 32 L. Ed., 576, cited by counsel for defendants, we do not think determines the question here presented.

Second. It is said this contract cannot be specifically enforced for the reason that neither the contract itself nor the pleadings, nor the report of the court of chancery appeals, describes the thing to be invented or patented.

In this connection counsel cites Pomeroy's Equitable Remedies, vol. 6, section 764, to the effect:

"A greater degree of certainty and definiteness is required for specific performance than to obtain damages at law. For specific performance is required that degree of certainty and definiteness which leaves in the chancellor no reasonable doubt as to what the parties intended, and no reasonable doubt as to the specific thing equity is to compel done."

As already seen, the description of the invention proposed to be patented was as follows:

"A device to dispense with the link motion of any reversible engine by the adoption of a reverse lever to take

the place of apparatus controlling said link motion on any reversible engine."

We think this description is sufficient, especially in view of the stipulation of counsel, which we find in the record, to wit: "That the device about which this suit is brought, and which is the subject-matter of the alleged contract, is patentable and valuable, and is very valuable."

Third.  It is said that the contract cannot be enforced for want of mutuality; but an analysis of the contract already made shows the reciprocal obligations that were assumed by the parties thereto.

Fourth.  It is said the contract cannot be enforced because it in effect requires of Smart personal services, not only of peculiar skill, but of inventive genius.  Authorities are then cited to show that such services are not subject to enforcement by a decree for specific performance.

We are unable to agree with counsel in this construction of the contract.  The legal effect of the contract was an assignment of an interest in a valuable invention, which the defendant expected to have patented.  The authorities already cited are sufficient to show that even an oral assignment of an interest in an invention expected to be patented is valid and enforceable.

Fifth.  It is said the present bill was premature and filed prior to the time for performance of the contract, since neither the invention nor the patent was in existence, and there could be no transfer of either when the

McRae v. Smart.

bill was filed. It is said the bill should be dismissed, because filed only for the purpose of declaring future rights; citing *Pritchitt* v. *Kirkman*, 2 Tenn. Ch., 390, and *McCall* v. *McCall*, 1 Tenn. Ch., 500.

This contention is not sound. The bill alleges, and the court of chancery appeals finds as a fact, that the defendant repudiated his contract and refused to recognize any rights of the complainant thereunder, but, on the contrary, assisted in the organization of a corporation and assigned to it this patentable device. The bill was, for these reasons, not premature.

We are of opinion complainant is entitled to a one-half interest in said patent when the same is issued, and that he is entitled to a specific execution of the written contract with the defendant Briney Smart entered into on the 21st day of February, 1905, and that the transfer by Briney Smart of complainant's one-half interest in this patent to his co-defendants, as well as the transfer of said patent to the Briney Smart Inventing & Manufacturing Company, was utterly void, since those transfers were made to defendants with a full knowledge of complainant's rights.

The defendants will be perpetually enjoined against interfering with complainant in the assertion of his right to one-half interest in said patent. The court is further of opinion that complainant, W. D. McRae, and the defendant Briney Smart own the entire legal and equitable interest in said patent when issued, and that the other defendants, including the Briney Smart Inventing &

Manufacturing Company, have no interest whatever in same.

The court is further of opinion that, as a condition of the specific execution of said contract, the complainant will be required to perform and fulfill all the obligations assumed by him therein.

"The doctrine is fundamental that either of the parties seeking a specific performance against the other must show as a condition precedent to his obtaining the remedy that he has done or offered to do, or is willing to do, all the essential and material acts required of him by the agreement at the time of commencing the suit, and also that he is ready and willing to do all such acts as shall be required of him in the specific execution of the contract according to its terms." Pomeroy, Eq. Jur., vol. 3, section 1407.

Complainant will therefore be required, within thirty days from the entry of this decree, to pay into the registry of the court the sum of $———, shown by the record to have been incurred by the defendant Briney Smart in completing the model for said mechanical device and for necessary expenses incurred in the prosecution of his application for a patent.

When this contention shall have been complied with, complainant will be entitled to a specific execution of the contract.