Argued March 29, decided April 26, 1910.

## BOGARD v. BARHAN.*

[108 Pac. 214.]

DEEDS—PROPERTY CONVEYED—CONVEYANCE OF BUILDING.

1. A conveyance of a particular building, conveys by implication so much of the land upon which it is situated as is necessary to the use of the building.

*See, also, 52 Or. 121 (96 Pac. 673).

SPECIFIC PERFORMANCE—CONTRACT TO CONVEY.

2. Though an agreement erroneously described a larger estate or area than the vendor owned or intended to convey, he will be compelled to convey, and the purchaser to accept, any interest which the vendor had, when the purchaser knew and consented that only the interest actually possessed was the subject of the agreement, so that the fact that the written agreement was to convey a store building would not prevent a suit to compel specific performance by a conveyance of the first story thereof, where that was the part of the building owned by the vendor and intended to be conveyed.

CONTRACTS—CONSTRUCTION—DATE.

3. When an instrument specified the month .in which something is to be done, but omits the year, it is to be assumed, in absence of a contrary implication, that the month intended was that named next ensuing.

SPECIFIC PERFORMANCE—ACTIONS—PLEADING—ALLEGATIONS—TERMS OF CONTRACT.

4. In an action to compel specific performance of an agreement to transfer a store building, etc., and pay a certain sum in cash and give a note for another sum in consideration of the transfer of other property, it could be inferred from an allegation in the complaint that the cash payment was to have been made when the parties exchanged deeds that it was intended that the note should be given at the same time.

EXCHANGE OF PROPERTY—CONTRACT—CONSTRUCTION.

5. Though a contract for the exchange of land did not provide the time when the note to be given as part of the consideration was to be executed, it will be held that the note was to bear the same date as the agreement to convey.

VENDOR AND PURCHASER—CONTRACT—CONSTRUCTION.

6. Where a contract to convey provided that one party should pay a certain sum in cash as a part of the consideration, such sum was payable at all events within a reasonable time, if the time of payment was not stated in the contract.

FRAUDS, STATUTE OF — WRITING — SUFFICIENCY — STATEMENT OF CONSIDERATION.

7. A mutual agreement to exchange land is a sufficient consideration to sustain a contract under Section 797, B. & C. Comp., making an agreement for the sale of realty void, unless it or some .memorandum thereof expressing the consideration is in writing, and subscribed by the party to be charged.

SPECIFIC PERFORMANCE—ACTIONS—DEFENSES—PREMATURE ACTION.

8. In 'a suit to compel specific performance of a contract to exchange property, an objection that the suit was brought before the property was to be delivered under the contract, was untenable to defeat the suit, where the deeds could be executed pursuant to the decree without compelling defendant to relinquish possession until the time he was to deliver possession under the contract; there being no plea in abatement of the suit on the ground of objection stated.

DEEDS—DELIVERY—NOTICE—AGENCY.

9. Delivering a deed to the county recorder by the grantor for the purpose of having it recorded, does not constitute a delivery to the

grantee, for the recorder, not being the agent of the grantee, had no authority to accept it, and such act of itself will not operate as a delivery of the deed.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. CHIEF JUSTICE MOORE.

This is a suit by Z. T. Bogard against A. Barhan and C. Barhan to enforce the specific performance of a contract, of which the following is a copy, to-wit:

"Woodburn, Ore., June 16, 1906.

"This agreement made this date between A. Barhan, party of the first part, and Z. T. Bogard, party of the second part, witnesseth: That the party of the first part agrees to transfer to the party of the second part the following described property: The brick store building occupied by Beebe & Whitman located in Woodburn, Marion County, Oregon; also my 15-acre farm located one mile north of Woodburn, Marion County, Oregon; also to pay one hundred dollars cash and give my note for eight hundred dollars payable on or before eight years in payments of one hundred dollars each year with interest at the rate of 8% payable annually. For this the party of the second part agrees to transfer to the party of the first part his 5-acre residence property laying west of the Catholic church; also lot 7 block 2, Tooze's addition to Woodburn. (Each party to bring abstract down to date.) And it is further agreed that the taxes on property of party of the first part is to be assumed by party of the second part and that on party of the second part to be assumed by party of the first part, and that party of the second part is to occupy his residence property until Sept. 30th; and that party of the first part is to occupy the 15-acre farm until the party of the second part gives possession of his residence property.

"A. BARHAN.
"Z. T. BOGARD."

A former decree herein was reversed for the reason that the attempted description of the premises, as stated in the complaint, was too indefinite to authorize the relief sought. *Bogard* v. *Barhan,* 52 Or. 121 (96 Pac. 673.) The cause having been remanded, the complaint was

amended so as specifically to designate each tract of land in question, the "brick store building" being described as "all that portion of lot 4 in block 1 of Woodburn, Marion County, Oregon, together with that portion of the first story only of the I. O. O. F. building located thereon, which said portion of said lot is described as follows," giving the boundaries thereof. It is also alleged that A. Barhan stipulated to pay $100 "when the said parties should exchange deed, and to execute his promissory note," etc., as stated in the agreement; that on June 26, 1906, for the purpose of evading the terms of the contract and without any consideration therefor, he executed to his mother, the defendant C. Barhan, a pretended deed of the brick store building; and that, though the sealed instrument was never delivered, it was the next day copied in the records of deeds of Marion County, which simulated conveyance was a scheme to defraud the plaintiff.

A demurrer to the complaint as amended on the ground that it did not state facts sufficient to constitute a cause of suit being overruled, an answer was filed admitting that the contract mentioned was signed by A Barhan, but denying every other averment of the initiatory pleading. For a separate defense it is alleged that the negotiations which had been pending between him and plaintiff for the exchange of their respective tracts of real property were consummated June 14, 1906, but two days thereafter by mutual consent and upon a sufficient consideration the writing was changed so that instead of transferring "the brick store building," and giving a note for $800, A. Barhan was to convey his residence property in Woodburn to plaintiff and to give him a note for $400 payable on or before four years "from that date," in annual installments of $100 each, with interest at the rate of 8 per cent per annum, and that at all times he has been ready, able, and willing to perform his part of the altered contract.

For a further answer it is alleged that neither of the defendants made or signed any agreement "expressing the consideration" concerning the sale of the real property or of any part thereof, as described in the complaint, or that they identified the premises in any manner. For a third defense, it is averred that prior to June 16, 1906, A Barhan was indebted to his mother in the sum of $1,275, with accrued interest, evidenced by promissory notes, and to secure their payment he executed to her a deed, absolute in form, but which was intended as a mortgage upon the brick store building, that she accepted this deed without knowledge of any claim by the plaintiff to the premises, and that the transaction was without fraud. The reply having denied the allegations of new matter in the answer, the cause was tried, resulting in a decree as prayed for in the complaint, and the defendants appeal.

AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. E. P. Morcom* and *Mr. George G. Bingham.*

For respondents there was a brief with oral arguments by *Mr. John A. Carson* and *Mr. Thomas Brown.*

Opinion by MR. CHIEF JUSTICE MOORE.

In the former opinion in this cause it was determined that the description set forth in the contract, if properly delineated in the complaint, was sufficient to authorize the admission of parol testimony to identify the premises. *Bogard* v. *Barhan,* 52 Or. 121 (96 Pac. 673.) From a reexamination of the question so involved, we are satisfied that the conclusion correctly states the law applicable thereto. *Burns* v. *Witter,* 108 Pac. 129.

1. Several objections are now urged against the sufficiency of the contract that were not entertained at the prior trial. These matters will be considered in the order in which they occur in the memorandum. Thus it is insisted that the specification, "the brick store building,"

does not describe any land, and for that reason an error was committed in decreeing a conveyance of the premises occupied by the structure, or of any real property, for the contract was entire, and the insufficiency of any of its terms necessarily defeats the whole agreement, since the premises to be exchanged by the respective parties were treated by them as indivisible. The doctrine first asserted is untenable; for, as is said by an author, "courts have frequently decided that a conveyance of a building or barn used as a term of description will convey also the land upon which the building or structure may be erected." Devlin, Deeds, § 1200. In the section following that to which notice is attracted it is observed: "But only so much of the land as is necessary to the use of the structure will pass by implication by a conveyance of the structure itself," etc.

2. It will be remembered that, though the memorandum refers to "the brick store building," etc., the complaint specifically describes the supporting real property, and alleges that only the first story of the building is involved in this suit. It is maintained that such discrepancy is so great as to defeat a specific performance of this part of the contract in decreeing which an error was committed. Though an agreement erroneously describes a larger estate or a greater area than the vendor owned or intended to convey, the purchaser will be compelled to accept such interest or *superficies* when he had knowledge thereof and consented that only the title or extent of land then actually possessed by the vendor was the subject of their consummated negotiations. Pomeroy, Cont. (2 ed.) § 346. The rule thus announced is equitable, and must be similarly applicable to each party who seeks specifically to enforce a contract to convey a building; and, as the complaint alleges and the evidence shows that only the lower story of the structure mentioned and the real property covered thereby were intended to be conveyed, no error was committed as alleged.

3. It is contended that the contract in question does not indicate when the sum of $100 in cash referred to in the memorandum was to have been paid, or the note for $800 given, or specify what year on "September 30th" thereof Bogard was to surrender the possession of his residence property, under which circumstances the writing is too indefinite, and the court erred in its decree. Considering these matters in their reverse order, the rule is well settled that, when a month is specified in a written instrument which omits to state the year intended, it will be inferred, in the absence of any implication to the contrary, that it is the designated month then next ensuing. 5 Words & Phrases, 4575.

4. It will be recalled that the complaint states that the $100 in cash was to have been paid "when the said parties should exchange deeds," and it is fairly to be inferred from such averment that it was intended the note for $800 should have been given at the same time.

5. Although no testimony was offered on this subject, since the contract was received in evidence showing that it was executed June 16, 1906, we think the note was to have been dated the same as the agreement. This conclusion seems to be supported by the averments of the answer, which state that by the modified agreement the $400 referred to therein was to have been paid "on or before four years from date"; that is, from June 16, 1906.

6. In any event, however, the $100 mentioned was to have been paid in cash within a reasonable time, which has certainly elapsed since the subscription of the contract. At the trial testimony was given respecting the alleged modification of the agreement, but we think it satisfactorily appears that the only change made after the contract was signed related to the abstracts of the respective parties, which clause, by mutual consent, was mutilated by drawing a line through it, but is hereinbefore set out in full, though in parenthesis.

7. There is no merit in the allegation of the answer that the memorandum in question is void for failure to express a consideration, as required by enactment. Section 797, B. & C. Comp. It will be kept in mind that the agreement specified that the land of the respective parties was to have been exchanged. This statement shows a legal *quid pro quo,* and hence asserts a sufficient inducement to satisfy the requirement of the statute.

8. As possession of a part of the premises was not to have delivered until "September 30th," it is argued that, if the year omitted from the memorandum was intended to be 1906, this suit was commenced prior thereto, and therefore prematurely brought, for which reason an error was committed in rendering the decree. No plea in abatement was interposed or objection urged on the ground now asserted to defeat the maintenance of this suit, and, as the execution of the deeds is the relief sought, such redress could have been granted without a relinquishment of the possession of a part of the land until the time therefor had arrived. We conclude, therefore, that the suit was properly instituted; that the agreement is not void for uncertainty, either as to the description of the premises or the time for the performance of the conditions; and that the parol testimony applies the specification of the memorandum to the particular real property to the exclusion of all other tracts.

9. The remaining question is whether or not the execution of the deed by A. Barhan to his mother was a scheme adopted to circumvent a specific performance of the agreement herein. That he was indebted to his mother in the sum claimed is evidenced by the promissory notes offered in evidence. We do not think, however, that she was urgently insisting upon the payment of these obligations or the giving of security therefor, and feel satisfied that he executed to her the deed in question, thinking it would bar a recovery herein. His deed was

not delivered to his mother, but placed on record, evidently without her knowledge, and, this being so, no title passed thereby: *Cravens* v. *Rossiter*, 116 Mo. 338, 344 (22 S. W. 736: 38 Am. St. Rep. 606, 608). In that case it is said:

"The delivery of the deed to the recorder for the purpose of having it recorded did not amount to a delivery to the defendant, for the recorder was not the agent of defendant, and hence had no authority to accept it. Besides this, he did not undertake to accept it for or in behalf of the defendant. He received it, recorded it, and transmitted it to the grantor. The grantor did not part with his dominion over the deed until after it had been recorded. * * Recording a deed by the grantor, without the grantee's knowledge or assent, does not of itself operate as a delivery of the deed. 1 Devlin, Deeds, § 290, and cases cited. There was therefore no delivery of this deed until the defendant received notice of its existence, and that was long after the date of the judgment."

It follows from these considerations that the decree should be affirmed; and it is so ordered.        AFFIRMED.