A. SLIMMER and L. J. Thomas, Respondents, v. HARRY H. MARTIN, Administrator of the Estate of William H. States, Deceased; Julia A. States, Widow of the Said Deceased; Mollie A. Fouch, Lewis E. States, Arthur J. States, Frank R. States, Etta G. Sears, Elmer E. States, and Harry W. States, a Minor, and G. W. States, Guardian of the Said Harry W. States, Appellants.

(172 N. W. 829.)

**Specific performance — remedy should be sought promptly — when specific performance not granted.**

The remedy of specific performance must be promptly sought, and where there is an unexplained delay of approximately five years in bringing the action, and a further delay of approximately four years before the entry of judgment, the land in the meantime being in the possession of third parties, specific performance will not be decreed.

Opinion filed April 29, 1919.

Appeal from District Court of Ward County, *Leighton,* J. Reversed.

*Geo. P. Homnes* and *Brace & Stuart,* for appellants.

In case a contract for the purchase of land is breached by the vendee, the vendor has various remedies. Richard v. Marshall (Iowa) 103 N. W. 774; Waters v. Pearson (Iowa) 144 N. W. 1026; Miller v. McConnell (Iowa) 157 N. W. 943; Curr Co. v. Nygren, 114 Minn. 268, 130 N. W. 1112, Ann. Cas. 1912C, 538; 22 Enc. Pl. & Pr. 702.

A vendor's lien exists only when the vendor has conveyed title to the vendee. Pom. Eq. Jur. 3d ed. §§ 1260–1262.

This rule is recognized by the courts of our own state. Roby v. Bismarck Nat. Bank, 4 N. D. 156. See also Devlin, Real Estate, 3d ed. §§ 1249–1250a; Halvorsen v. Halvorsen, 120 Wis. 59, 97 N. W. 494; Shelly v. Mikkelson, 5 N. D. 22, 63 N. W. 210; Raymond v. San Gabriel Val. Land & Water Co. 4 C. C. A. 89, 53 Fed. 888; Greenfield v. Carlson, 30 Ark. 547; N. D. Comp. Laws 1913, §§ 7152, 7608; Warvelle, Vendors, 2d ed. § 937; Prichard v. Mulhall (Iowa) 103 N. W. 774.

When the vendor has done all that his contract calls for and the vendee refuses to perform his part, the vendor can recover only the difference between the contract price and the market value at the time of the breach. Note to Gerrard v. Dollar, 67 Am. Dec. 271, citing Old Colony R. R. Corp. v. Evans, 6 Gray, 25; Scudder v. Wadingham, 7 Mo. App. 27; Louis v. Lee, 15 Ind. 500; Meason v. Kaine, 63 Pa. 335; Porter v. Trodis, 40 Ind. 556; Robinson v. Heard, 15 Me. 296; 29 Am. & Eng. Enc. Law, 720.

*Palda & Aaker* and *Greenleaf, Wooledge, & Lesk,* for respondents.

A contract lien may be foreclosed in an action for specific performance, even in cases where the legal title has not passed from the vendor to vendee. Loveridge v. Shurtz (Mich.) 70 N. W. 132; Roby v. Bismarck Nat. Bank, 4 N. D. 156, 59 N. W. 719; Brace v. Doble (S. D.) 52 N. W. 586; Freeman v. Pauson (Minn.) 119 N. W. 651. See also Abbott v. Moldestad (Minn.) 77 N. W. 227; Sparks v. Hess, 15 Cal. 186; 36 Cyc. 778, 792, and cases cited; 39 Cyc. 1794, 1849, and cases cited; Edmison v. Zaborowski, 68 N. W. 288; Gates v. Parmly, 66 N. W. 257; Loveridge v. Shurtz, 70 N. W. 132; Clark v. Hall, 7 Paige, 385; Corpus v. Teedt, 69 Ill. 205; Peake v. Young, 18 S. E. 237; Peck v. Zborwski, 82 N. W. 387; Strauss v. Beudheim, 66 N. Y. Supp. 247; Andrews v. Sullivan, 7 Ill. 327; Robinson v. Appleton, 124 Ill. 276, 15 N. E. 761; Goddin v. Vaughn, 14 Gratt. 102; Adams v. Ash, 46 Hun, 105; Peake v. Young, 40 S. C. 41; Brace v. Doble, 3 S. D. 110, 52 N. W. 586; Martinson v. Regan, 18 N. D. 467; Comp. Laws 1913, §§ 7192–7201; Shelton v. Jones (Wash.) 30 Pac. 1061; see note to Davis v. Isenstein, 45 L.R.A.(N.S.) 52.

BIRDZELL, J. This is an appeal from a judgment in a vendor's action for specific performance. The specification is for a trial *de novo.* The appellants, however, insisted upon a jury trial in the court below, and upon this appeal they also rely upon the ruling of the trial court denying it as an error vitiating the judgment.

The action was commenced by the service of a summons on December 8, 1913, and the complaint was filed in the office of the clerk of the district court of Divide county, January 23, 1914. The trial took place on September 18, 1916. Findings and conclusions, order for

judgment, and judgment, were filed on December 7, 1917. The record on appeal to this court was filed on April 30, 1918.

In the com_'aint, relief is prayed for as follows:

"(1) That the amount agreed by the defendant to be paid for said land and the whole thereof, with interest according to the terms of the said contract, and the amount of the taxes paid on said premises by the plaintiffs, be ascertained by the court, or under its direction, and that the plaintiff have judgment against the defendant for the amount so ascertained, together with their costs and disbursements herein;"

"(2) That by the decree and judgment of this court herein, the premises hereinbefore and in said contract described be sold to satisfy the amount of such judgment, together with the costs and expenses of such sale;"

"(3) That the defendant be foreclosed of all right, title, interest, and estate in and to said premises, and the whole thereof, except the right of redemption thereof from such sale within such time as may be by the decree of the court fixed, for that purpose;"

"(4) That if the proceeds of such sale are insufficient to satisfy the judgment herein, together with the expenses of such sale, that the plaintiff have execution against the defendant for any deficiency remaining after applying thereto the proceeds of such sale;"

"(5) That the plaintiffs have such other and further relief as to the court may seem just and equitable."

The first contention of the appellant is that the action should have been considered an action at law, and that the defendant was consequently entitled to a jury trial. It is clear from a reading of the complaint that it purported to state a cause of action cognizable in equity. The contract, however, was set forth in full in the complaint and made a part thereof; so that if, under all the allegations, the complaint states a cause of action triable to a jury, it should have been so tried. It provided for the payment of the purchase price ($11,000) by the giving of a promissory note bearing 8 per cent interest per annum from March 1, 1909, payable as thereinafter stated. The terms of payment were expressed as follows: "$1,000 on the principal and all accrued interest on November 1, 1909, and $1,000 and accrued interest on the first day of November of each and every year thereafter, until entire purchase price and accrued interest has been paid." The contract

42 N. D.—17.

also embraced other obligations of the purchaser, such as the obligation to break the land, deliver the crops, pay taxes, and to secure the annual payments by mortgage on the crops, though the ownership of the same is reserved in the vendor. There is no acceleration clause under which the whole amount of deferred instalments might be declared to be due on the failure of the purchaser to fully perform with respect to a single instalment, or in case of other default. It is provided, however, that in case the purchaser shall fail to perform punctually "all and each of the stipulations of this contract, . . . then the party of the first part shall have the right to declare this contract null and void, and on such declaration all right and interest thereby created . . . shall utterly cease and all payments made or improvements placed upon said premises shall remain in and belong to the party of the first part as rent for the said premises." It is further provided that upon cancelation the party of the first part shall cancel and surrender the purchase-price note.

It is apparent that, at the time the action was brought, the time had not arrived for the delivery of the deed; and that but five of the eleven annual instalments ($1,000 each) of the purchase price were due. From this it follows that the plaintiff could have secured a money judgment for the instalments due by bringing an action at law for the unpaid instalments. Shelly v. Mikkelson, 5 N. D. 22–27, 63 N. W. 210. But, as held in the case cited, such an action is essentially an equitable proceeding for specific performance. See also to this effect Beecher v. Conradt, 13 N. Y. 1008, 64 Am. Dec. 535, where it was held that independent promises to pay instalments of the purchase price become dependent upon the tender of the deed when the time has arrived for the transfer to be made. See also 39 Cyc. p. 1900. In other jurisdictions, however, it is held that an action for the purchase price, under instalment contracts, may be maintained independently of any equitable considerations governing the remedy of specific performance. See Gray v. Meek, 199 Ill. 136, 64 N. E. 1020; 39 Cyc. supra; 36 Cyc. 565. We are convinced that both the better reason and the weight of authority support the proposition that, since an action by the vendor to recover the price is not essentially an action to recover damages as compensation, it should be controlled by equitable considerations. 29 Am. & Eng. Enc. Law, 720.

Since the action must be regarded as primarily one in equity to obtain specific performance, it presents a somewhat novel feature.    It attempts to secure specific performance of a contract before the time has arrived for the delivery of the deed by the vendor or the full payment of the purchase price by the vendee.   The query arises whether, in the proper exercise of equity jurisdiction, a court can decree the specific performance of a contract which is broken in reality as to some of its provisions, and which is broken only in anticipation as to the remainder.   Does the doctrine, in short, of anticipatory breach of contract, as announced in the leading case of Hochster v. De la Tour, 2 El. & Bl. 678, 118 Eng. Reprint, 922, 22 L. J. Q. B. N. S. 455, 17 Jur. 972, 1 Week. Rep. 469, 6 Eng. Rul. Cas. 576, extend to the remedy by way of specific performance?   Since the case of Stanford v. McGill, 6 N. D. 436, 38 L.R.A. 760, 72 N. W. 938, was overruled (Hart-Parr Co. v. Finley, 31 N. D. 130, L.R.A.1915E, 851, 153 N. W. 137, Ann. Cas. 1917E, 706), it has been the law of this jurisdiction that, upon the repudiation of a contract in advance of the time for performance, the opposite party may treat the contract as broken for the purpose of maintaining an action to recover damages for its breach.   The doctrine of Hochster v. De la Tour, supra, is thus the law of this jurisdiction applicable to all contracts except, probably, negotiable instruments.   See Roehm v. Horst, 178 U. S. 1, 44 L. ed. 953, 20 Sup. Ct. Rep. 780.   In applying the remedy of specific performance, however, before the time for performance has arrived, there are inherent practical difficulties that are not present in the same degree where it is sought merely to recover damages.   Damages can well be estimated in advance on the supposition that the contract will not be performed, but to enforce specific performance before the time has arrived for performance under the contract necessarily involves the compelling of one to do that which he has not contracted to do.

In the case of Miller v. Jones, 68 W. Va. 526, 36 L.R.A.(N.S.) 408, 71 S. E. 248, this question was considered and it was there said: "The contract in the present case being of that general class of contracts which equity will specifically enforce, we see no reason why plaintiff may not maintain his suit, notwithstanding the time has not arrived for complete performance of the contract."   It was held that the suit, though brought by the vendee for specific performance prior to the time for

the delivery of the deed, was not prematurely brought. The court further held, however, that its decree could go no further than to require performance *according to the agreement*. So, in reality, the suit merely determines what the rights of the parties are under the agreement, and does not compel performance in advance of the time stipulated. For additional authorities supporting the remedy of specific performance, see Bear v. Fletcher, 252 Ill. 206, 96 N. E. 997; Payne v. Melton, 67 S. C. 233, 45 S. E. 154; McRae v. Smart, 120 Tenn. 413, 114 S. W. 729; Bogard v. Barhan, 56 Or. 269, 108 Pac. 214.; Contra Friedman v. McAdory, 85 Ala. 61, 4 So. 835; see also note in 36 L.R.A.(N.S.) 408.

It is obvious that in the case at bar the court could not have entered a personal judgment against the defendant, at the time the action was brought, for the entire amount of the purchase price. It could only have decreed that the contract was binding; that it was one which the plaintiffs were entitled to have specifically enforced; that the defendant should make payments from time to time as they matured under the contract; and that, in the event of his failure to do so, the vendors might have a special execution directing the sale of defendant's interest in the land, subject to redemption.

Having sought specific performance, the plaintiffs, on account of the provisions of the contract in question governing cancelation, are precluded from obtaining a personal judgment covering instalments falling due subsequent to the bringing of the action. It is expressly provided in the contract that upon cancelation the vendor will cancel and surrender the note for the purchase price; and, though no note was given in the instant case, this provision, of course, would operate to cancel the obligation to pay future instalments of the purchase price in the event of a cancelation for any cause or in any manner whatsoever. If, as a result of the action for specific performance, the purchaser should fail to pay the judgment for the amount of the purchase price, due up to the bringing of the action, and his equity were sold to satisfy the judgment, and there should be no subsequent redemption, it is clear that it would be impossible for him to obtain title to the land by performing his contract to the extent of making the payments subsequently falling due. The contract would have been canceled by operation of law through the exhaustion of the remedy chosen by the

vendors themselves. The vendors, then, in bringing the action, must be held to have consented to a cancelation of the contract, in the event that the remedy sought should result in foreclosing the purchaser's right to ultimately obtain the title. Hence, it would be inequitable to allow a personal judgment against the purchaser to stand for any amount that was not due at the time the action was brought. The judgment in this action is therefore erroneous to the extent that it embraces the instalments payable after action was brought and before the date of trial, which, as indicated in the statement of facts, occurred some eight years after the contract was made. So, taking the view of this case which is most favorable to the respondent, we would be compelled to modify the judgment so as to direct the sale for only the amount due up to the time of the bringing of the action, and to further limit it so that the subsequent instalments could not be made the basis of a personal judgment in the event of the failure of the purchaser to redeem from a special execution sale.

The questions discussed above were fully arued or suggested in briefs of counsel and upon oral argument. A determination of them has seemed to the writer and to Mr. Chief Justice Christianson to be necessary in order to determine the character of the action and the principles that should control in arriving at a decision. But inasmuch as the plaintiff's remedy is, in the opinion of the court, wholly precluded by acquiescence and laches, our associates deem such discussion unnecessary. We who agree to the principles heretofore stated are not disposed to question the judgment of our associates in this respect; but our views are stated for what bearing they may be thought to have upon the case in hand.

The court is agreed that the plaintiff's remedy is barred. As previously stated herein, the contract between these parties was made in April, 1908, and possession was to be given on March 1, 1909. The note stipulated for in the contract was never given, and as early as January, 1909, the plaintiffs, in a letter to one Scofield, who was interested in the deal going through, manifested considerable concern over this fact, and anticipated that the defendant, who had previously made some objection to the title, did not care to go through with the deal. In the letter referred to the plaintiff said: " . . . We presume that States may try to back out on this deal, and are sending you these

papers believing that you had better have Palda get States to come to Minot on some pretext or other and get him to sign the note, and accept a copy of the contract covering these lands. Palda stands ace high with States, and we think he can handle him better than anyone else, and as you seem to consider this a good sale on this land it will never do to let it fall through, and in the event that Palda cannot get States to come to Minot, it might be well to have him go to Crosby, North Dakota, where States lives and bluff the thing through. He would no doubt come across better if he could be gotten to Minot, as his family are liable to make a kick, if Palda has to go to his home to get his signature." The record discloses that the defendant early repudiated his obligation under the contract, and that he persisted in a course of nonperformance. Yet, this action was not begun until December 8, 1913, or about five years after the defendant's attitude was known. And in the record, though the defendant pleaded the acquiescence of the plaintiffs in his abandonment of the contract, no explanation whatever is found for the delay. We are of the opinion that the laches shown on the face of the record not only amounts to proof of the acquiescence pleaded, but it puts the plaintiffs in a position where they are not entitled to invoke the equity powers of the court.

While the remedy by way of specific performance is equally open to both the vendor and the purchaser under a contract for the sale of real property, it is not to be resorted to in cases where hardship or inequitable consequences are apt to follow. In the case at bar, the possession of the land during the entire period of delay, and in fact to the present time,—eleven years after the contract was made,—has remained in an uncertain state,—a banker testified that up to the time the action was tried he had collected from different occupants $1,685, which was on deposit in his own name in the bank, subject to the call of the successful litigant. It is manifest that, owing to this delay and the long period of uncertainty as to the result, it will be impossible for a court of equity to put either party in the position he or they would have occupied had the contract been faithfully performed or had its performance been promptly compelled according to its spirit. This inability is apparently due, primarily, to the delay of the plaintiffs in promptly pursuing their remedy; hence, they are in no position to complain.

Where a party desires to avail himself·of the equitable remedy of specific performance, he should proceed as promptly as the circumstances permit. Even a short delay may result in a situation making the pursuit of the remedy inequitable; and especially where, as here, the purchaser has not gone into possession and has enjoyed no·valuable rights under the contract. For authorities, see Scott v. Desire, 175 Ill. App. 215; McDermid v. McGregor, 21 Minn. 111; Eastman v. Plumer, 46 N. H. 464; Colby v. Gadsden, 34 Beav. 418, 55 Eng. Reprint, 696, 17 L. T. N. S. 97, 15 Week. Rep. 1185; Fry, Spec. Perf. 5th ed. §§ 1100–1102; Pom. Spec. Perf. Contr. §§ 412, 425; 36 Cyc. 724.

For the foregoing reasons, the judgment appealed from is reversed, and the cause dismissed, with costs,

BRONSON, J. I concur in result.

GRACE, J. I concur in the result only.

ROBINSON, J. (concurring). This is a suit against the heirs and legal representatives of William States for the specific performance of an alleged contract to sell and convey 420 acres of land in town 162 of range 92. The plaintiffs aver that in April, 1908, they made with States a written contract to convey to him the land, and he agreed to pay for the same $11,000, with interest at 8 per cent, in eleven equal annual payments according to eleven promissory notes. In December, 1917, the district court gave judgment in favor of the plaintiffs for the nine payments that had become due, to wit, $9,000, with interest and taxes, amounting to nearly $17,000, and it was adjudged that the land be sold to satisfy the same, with costs and expense, subject to the payment of $2,000 and interest to become due, and subject to redemption within six months, and that an execution issue for any deficiency.

The appeal is taken by the administrator and the heirs of States. Now it appears that the deceased never took possession of the land, never paid a dollar on it, never gave either of the eleven promissory notes for payment, and never accepted the title. He at once repudiated

the contract, and the plaintiffs have always remained in possession and control of the land and have received the rents and profits, which they offered to apply on the judgment. Under such facts it seems nothing less than downright folly to bring an action for specific performance. Indeed, where a party has merely contracted to sell land, and the purchaser has never accepted the title or the land, and has never taken possession and has repudiated the contract, the seller has no right to an action for specific performance. His remedy is by an action for damages, and not by a forced and expensive sale of his own land. His measure of damages is the excess, if any, of the purchase price over the value of the property. Comp. Laws, § 7152. The presumption is that in any honest contract for the sale of land the agreed price does represent the fair value of the land; and if, for any reason, the purchaser refuses to accept the title and possession, that is no reason for a suit in equity, a judgment, and forced sale of the land. There is no reason for charging the party who breaches an agreement to purchase land with the cost of a suit, an expensive sale, and the difference between the original contract price and the figure at which the vendor may choose to bid in his own land. Such is not the measure of damages provided by the statute. It is high time for distinguished lawyers to learn better than to rush into a court of equity on every little dog-eared case which in no way contains any principle of equity. It is not good practice, either in Minot or elsewhere. The judgment should be reversed and the action dismissed, with costs.