## WEISS v. GIRTZ.

(Fourth Division. Fairbanks. May 8, 1922.)

No. 2556.

**Specific Performance** ⊚⊃29(2)—**Statute of Frauds.**

Plaintiff and defendant made the following contract:

"Chatanika, Alaska, June 4, 1921.

"Received of Samuel R. Weiss two hundred dollars as part payment of $1,000 purchase price of Chatanika ditch and all flumes with ditch. Three hundred dollars is to be paid July 4; balance, $500, on or before September 15, 1921.

"Joe Girtz."

Plaintiff sued for specific performance of the contract. Defendant demurred to the complaint, urging particularly that description of the property is so indefinite and deficient that specific performance of the alleged contract is impossible. *Held*, the description in the memorandum sufficiently describes the property by its popular name, and it may be made more definite by oral evidence.

Plaintiff sues to enforce specific performance of an agreement for the sale of a water ditch, and, as he claims, a water right, which agreement is evidenced by the following memorandum in writing:

"Chatanika, Alaska, June 4, 1921.

"Received of Samuel R. Weiss two hundred dollars as part payment of $1,000, purchase price of Chatanika ditch and all flumes with ditch. Three hundred dollars is to be paid July 4; balance, $500, on or before September 15, 1921.       Joe Girtz."

Defendant demurs to the complaint, urging particularly that the description of the property is so indefinite and deficient that specific performance of the alleged contract is impossible.

John A. Clark, of Fairbanks, for plaintiff.

Louis K. Pratt and H. J. Atwell, both of Fairbanks, for defendant.

RITCHIE, District Judge. It is agreed that the property involved is realty. Under sections 561 and 607 of the Alaska Code any interest in land or right connected with land is real property, and two sections of the statute of frauds might ap-

ply to this case. Written evidence is required for the following:

> "Sec. 1876. * * * (6) An agreement for leasing for a longer period than one year, or for the sale of real property, or of any interest therein, or to charge or incumber the same."
>
> "Sec. 1878. No estate or interest in real property, other than a lease for a term not exceeding one year, nor any trust or power concerning such property, can be created, transferred, or declared otherwise than by operation of law, or by a conveyance or other instrument in writing subscribed by the party creating, transferring, or declaring the same, or by his lawful agent under written authority, and executed with such formalities as are required by law."

There are no formalities required by Alaska law for a memorandum setting forth an agreement to sell real property except as contained here. There are formalities required in the execution of a deed, but none for an agreement. Without doubt it would be within the power of the Legislature to enact a statute prescribing that no memorandum in writing would be good under the statute of frauds unless it contained certain requisites, but neither Congress nor the Legislature has seen fit to enact such a law, so that we have to fall back on the general decisions.

It must be conceded that the memorandum in this case could not lack any statement it contains and avoid the statute of frauds. On the other hand, a slight addition to the description would make it reasonably adequate, and if the ditch were given a well-defined location on the Chatanika river, or near the town of Chatanika, or other well-known geographical designation, it would be certainly good. If it were even mentioned as "my" ditch, it would be good, unless the signer happened to have two ditches in the same locality.

An established rule in construing defective descriptions in memoranda for the sale of realty is that extrinsic evidence may be received to apply the terms of the description, but not to supply missing elements, without which the description is hopelessly defective. This rule is strongly urged by counsel for defendant in this case. General rules for guidance are laid down in Cyc and Ruling Case Law as follows:

> "While there is no doubt as to the correctness of the general principle that contracts must be certain before the courts will specifically enforce them, there is a lack of harmony in the cases as to the requisite degree of certainty needed to justify specific

performance. This lack of uniformity has been the subject of criticism, and it has been said that not infrequently the court's conception of certainty and definiteness varies in proportion to its conviction of the justice of the cause. A contract expressed in very general terms may not be void for uncertainty, and therefore may be the basis of an action for damages for its breach, while it would be entirely too loose and inexact to warrant a decree for specific performance. The degree of certainty required has sometimes been described as being reasonable certainty, having regard to the subject-matter of the contract. As a general rule a contract to convey real estate will not be specifically enforced, unless it describes the land to be conveyed with sufficient certainty to enable it to be located. But it has frequently been held that in an action for specific performance of such a contract latent ambiguities in the description of the premises involved may be aided by extrinsic evidence. Such evidence may be used to locate monuments and calls, or to identify tracts of land referred to by their popular names. The distinction should, however, always be clearly drawn between the admission of oral extrinsic evidence for the purpose of identifying the land described in the writing, and applying the description therein contained, and that of supplying and adding to a description insufficient and void on its face. The description of property in a contract of sale as in a certain town is considered sufficient, although it is described merely as a certain number on a certain street, if the contract bears date at the town where the property is situated. Where a vendor puts his vendee into possession of real estate, an uncertainty of description in the contract of sale, which otherwise might prevent specific performance of the contract, is thereby cured."

25 R. C. L. 221.

"The subject-matter of a contract falling within the statute of frauds must be so described in the memorandum as to be capable of certain identification. If, however, the description contained in the memorandum points to specific property, parol evidence is admissible to identify that property, the rule being that that is certain which is capable of being made certain.

"Where it appears from extrinsic evidence that the vendor owns but one parcel of land answering the description in the memorandum, the courts are inclined to uphold a meager description of the property. If, however, the description is uncertain on the face of the memorandum, or is shown by extrinsic evidence to be with equal plausibility applicable to more than one tract of land, the memorandum is insufficient under the statute."

20 Cyc. 270, 271.

I think the best authority holds that, if the description given in the memorandum identifies the property by references that can be easily understood, such as a popular name for it, or reference to an addition to a town, without naming the

town, which can easily be found by reference to plats, such descriptions are sufficient, if oral evidence will supply the connection. The citations already given and many of the decisions state the rule to be that, if a description can be applied by extrinsic evidence, it is sufficient, but nothing can be supplied to a defective description by such extrinsic evidence. The distinction is easy to understand in the abstract, but rather difficult to apply in the concrete, and examination of numerous authorities shows that the courts on similar facts cannot agree on what constitutes applying or supplying missing elements of a description.

The cases most nearly like the present one in their facts, which have been cited by counsel in this case, are the following. Taking first those in which a description in a written memorandum was held insufficient, the most forceful in their tendency to uphold defendant's contention herein are these:

In Craig v. Zelian, 137 Cal. 105, 69 Pac. 853, the description was held insufficient because the land involved was merely described as a strip in front of the Golden Rule store. The strip was not inclosed, and its boundaries were not given, and for that reason the California Supreme Court held it insufficient.

In Whiteaker v. Vanschoiack, 5 Or. 113, the contract relied on was a written memorandum with subsequent oral modifications, and the Oregon court held that, as they were not relying solely on the written memorandum that the oral part of the alleged contract was within the statute, the reason being obvious.

In Hartshorn v. Smart, 67 Kan. 543, 73 Pac. 73, plaintiff relied on this description, an agreement to buy "twenty-five, nine, Kingman." The Supreme Court, in affirming the District Court, noted the fact that there is in the state both a Kingman county and a town of Kingman, and it could not fairly be surmised whether "twenty-five, nine" referred to lot and block in the town or to section with township or range in the county.

In Bingham v. Honeyman, 32 Or. 129, 51 Pac. 735, 52 Pac. 755, plaintiff relied on a description reading, in substance:

"Commencing at the north line of" a certain "claim, running thence north up to the south line of" another "claim, thence fifty yards from low tide."

The Oregon Supreme Court held that the description was too indefinite because it could not be exactly located. It is obvious that "commencing at the north line of a claim" does not fix any particular point.

Possibly the strongest case cited by the defendant herein is Allen v. Kitchen, 16 Idaho, 133, 100 Pac. 1052, L. R. A. 1917A, 563, 18 Ann. Cas. 914, an Idaho case. If the ruling in this case were accepted as authority this demurrer would have to be sustained, but, with all due respect to the district and Supreme Courts of Idaho, I think the decision is contrary to the weight of authority and not consistent with sound logic. The description of property in the agreement referred to lots in two additions. Oral proof showed that those two plats were well-known additions to the city of Boise. Inasmuch as it could be easily ascertained that the lots involved were a part of the city of Boise, and the contract was made in Boise by residents of Boise, I cannot agree with the conclusion of the Idaho courts that the plaintiff was not entitled to show by extrinsic oral evidence the solitary fact that the property involved was in the city of Boise in the well-known plats designated.

Repeated Oregon decisions have upheld descriptions, I think, no more complete than the one involved in this case. In Flegel v. Dowling, 54 Or. 40, 102 Pac. 178, 135 Am. St. Rep. 812, 19 Ann. Cas. 1159, there were two memoranda. The first was signed by an authorized agent, who described the property as "lots 3 and 4, block 18, A. H." A later memoradum gave the same numbers in "Albina Homestead." No other identification of the property was given, but oral evidence was admitted to show its location.

In Guillaume v. K. S. D. Fruit Land Co., 48 Or. 400, 86 Pac. 883, 88 Pac. 586, the defendant company had platted some 40-acre lots in a large tract it owned in township 19 south, range 47 east of Willamette meridian, and in the memorandum it agreed to sell block 16, Arcadia, the name of the tract. No other description was given, but the Oregon Supreme Court held it sufficient to satisfy the statute.

In Bogard v. Barhan, 52 Or. 121, 96 Pac. 673, 132 Am. St. Rep. 676, four tracts of land were involved, the descriptions being as follows:

(1) The brick store building occupied by Beebe & Whitman, located.in Woodburn, Marion county, Oregon.

(2) Also my 15-acre farm located one mile north of Woodburn, Marion county, Oregon.

(3) His 5-acre residence property lying west of the Catholic church.

(4) Lot 7, block 2, Tooze's addition to Woodburn.

The Supreme Court held all these descriptions sufficient, but the case was reversed, because plaintiff's attorney, in trying to describe the properties more fully, fell into some lapses, the most important of which was that he only bounded one tract on three sides. In the circuit court the complaint was amended and a new decree given, which was affirmed by the Supreme Court. 56 Or. 269, 108 Pac. 214.

In Heyward v. Bradley, 179 Fed. 325, 102 C. C. A. 509, an agreement was made for the sale of all the phosphate rock and phosphate deposit contained on or in all of the Middleton lands on Ashley river, described in a specified plat, containing about 5,507 acres. The United States Circuit Court for the District of South Carolina held the description sufficient under the statute of frauds, and the decision was affirmed by the Circuit Court of Appeals of the Fourth Circuit.

This description, incomplete as it is, seems to me sufficient to comply with the essential requirement of the statute of frauds. I think any man of average intelligence and knowledge of business could take that memorandum, and go to Chatanika, and with little difficulty find the ditch mentioned in it, unless the signer of the memorandum, Joe Girtz, had two ditches in the immediate vicinity, or there should be two ditches commonly known as Chatanika ditch. If there is only one Chatanika ditch, and that belongs to Joe Girtz, an intelligent schoolboy could find it without trouble. It is true, as urged by counsel for defendant, that if Girtz had referred to the property as "my ditch" it would have aided considerably in identifying the specific property; but I do not deem that necessary.

The essential requirement of the statute of frauds, so far as it requires a written memorandum for certain kinds of contracts, is that no man shall be held to such a contract unless it is over his own signature. The inspiration of the original English statute of frauds was the frequent cases in which

it was often claimed, and often appeared probable, that an attempt was being made by skillfully concocted perjury to impose a contract upon responsible men who never made it. That is the primary reason for requiring a written memorandum, signed by the party to be charged, for every agreement to convey lands. When a man signs such a memorandum, the agreement ought to be sufficient whenever it can be shown by reliable testimony precisely what property was agreed to be sold. The danger from perjury in giving an exact description of the property, where it is more or less defective, is no greater than the danger from perjured testimony in any other cause.

For the reasons stated, the demurrer will be overruled.

---

⬅See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes