JAMES SPEARS, Respondent, v. EBEN WILLIS, Appellant.

1. PARTNERSHIP AT WILL — DISSOLUTION. The dissolution of a partnership at will may be implied from circumstances; but when not the result of mutual agreement there must be notice by the party desiring a dissolution, to his co-partner, of his election to terminate the partnership, or his election must be manifested by unequivocal acts or circumstances brought to the knowledge of the other party, which signify the exercise of the will of the former that the partnership be dissolved.

2. ASSIGNMENT OF PATENT — U. S. REV. ST. § 4898. The provision of the Revised Statutes of the United States (§ 4898), that "every patent or any interest therein shall be assignable in law by an instrument in writing," does not preclude the acquisition of equitable interests in patents under oral contracts.

3. ORAL AGREEMENT FOR SALE OF PATENT. Oral agreements for the sale of patents may be enforced in equity in the same manner and under the same conditions as oral agreements relating to any other species of personal property or intangible rights.

4. ENFORCEMENT OF ORAL AGREEMENT — PARTNERSHIP. A case for the enforcement in equity of an oral contract of assignment of a share in a patent is presented when a partnership for the manufacture and sale of articles under the patent has been formed and conducted for several years by the parties on the faith of the contract.

5. AGREEMENT TO ASSIGN PATENT — PAYMENT — PARTNERSHIP. The fact that a partner, to whom his co-partner had orally agreed to assign a share in a patent as the basis of the partnership and its business, has not paid the purchase price, will not defeat the right of such partner to equitable relief on an accounting of the partnership business, where it appears

that his co-partner has not demanded payment and the judgment allows the latter credit for the purchase money, with interest.

6. STIPULATION OF PARTNER, FOR PRIVATE ADVANTAGE. If one partner stipulates clandestinely for any private advantage or benefit to himself, to the disadvantage or in fraud of his partners, he will in equity be compelled to divide such gains with them.

*Spears* v. *Willis,* 78 Hun, 609, affirmed.

(Argued December 16, 1896; decided January 19, 1897.)

APPEAL from a judgment of the General Term of the Supreme Court in the third judicial department, entered May 29, 1894, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Theodore H. Swift* for appellant. The plaintiff cannot recover in this action upon the cause of action set forth in the complaint. (U. S. R. S. § 4898; *Baldwin* v. *Sibley,* 1 Cliff. [U. S.] 150; *Jordan* v. *Dobson,* 4 Fish Pat. Cas. 232; 2 Abb. [U. S.] 398; 7 Phila. 533; *Davy* v. *Morgan,* 56 Barb. 218; *Gibson* v. *Cook,* 2 Blatchf. [U. S.] 144; *Case* v. *Redfield,* 4 McLean [U. S.], 526; *Boyd* v. *McAlpin,* 3 McLean [U. S.], 427; 18 Am. & Eng. Ency. of Law, 131; Walker on Patents, § 274; *Burr* v. *De La Vergne,* 102 N. Y. 415; *Pordage* v. *Cole,* 8 Saund. 320; *Grant* v. *Johnson,* 5 N. Y. 247; *Eddy* v. *Davis,* 116 N. Y. 247.) Plaintiff's removal from Colton without any provision for conducting the business of co-partnership, and never having taken any part in it since, and without having ever invested a dollar of capital in it, was such an abandonment of the enterprise by him as worked a dissolution of the firm which was created solely to carry on that business. (17 Am. & Eng. Ency. of Law, 1097, 1108, 1109; *Denver* v. *Roane,* 99 U. S. 355; Pars. on Part. [2d ed.] 285, 418, 419; *Skinner* v. *Dayton,* 19 Johns. 513; *Mason* v. *Connell,* 1 Whart. 381; *Bishop* v. *Breckles,* 1 Hoff. Ch. 234; 5 Wait's Act. & Def. 135, 136; Collyer on Partnership, § 110; *Gilmore* v. *Ham,* 142 N. Y. 1; *Graves* v.

*White*, 87 N. Y. 463.) The co-partnership agreement and for the transfer of one-half title in the letters patent was void because not in writing, subscribed by the party to be charged therewith, and because by its terms it was not to be performed within one year from the making thereof. (2 R. S. 1234, § 13, subd. 1; 8 Am. & Eng. Ency. of Law, 746, 747; *Amburger* v. *Mamie*, 4 E. D. Smith, 393, 396; *Van Dyke* v. *Clark*, 19 N. Y. Supp. 650; *Drake* v. *Seaman*, 97 N. Y. 230; *Unglish* v. *Marvin*, 55 Hun, 45; *Day* v. *N. Y. C. R. R. Co.*, 51 N. Y. 583; 89 N. Y. 616.)

*Ledyard P. Hale* for respondent. A parol agreement to assign a patent or interest therein may be enforced in equity. The United States Revised Statutes (§ 4898), providing that patents shall be assignable in writing, do not affect the case. (*Burr* v. *De La Vergne*, 102 N. Y. 415, 421; *Searle* v. *Hill*, 73 Iowa, 367; *Hapgood* v. *Rosenstock*, 23 Fed. Rep. 86, 87; *N. Y. P. B. Co.* v. *U. P. B. Co.*, 32 Fed. Rep. 783; *P. K. B. Co.* v. *M. S. Co.*, 31 Fed. Rep. 286; *Scott* v. *Jackson*, 26 Pac. Rep. 898; *Nichols* v. *Marsh*, 28 N. W. Rep. 699; *Teschmacher* v. *Lenz*, 82 Hun, 594.) The state court had jurisdiction. (*Mayer* v. *Hardy*, 127 N. Y. 125; *Hyatt* v. *Ingalls*, 124 N. Y. 93; *Middlebrook* v. *Broadbent*, 47 N. Y. 443; *M. & H. T. Co.* v. *Gluenzer*, 30 Fed. Rep. 387.) The Federal courts have no jurisdiction of an action like this, unless by virtue of the citizenship of the parties. (*Hapgood* v. *Rosenstock*, 23 Fed. Rep. 86.) A patent may be owned by a partnership, and when so owned it constitutes an asset, and is to be disposed of like any other asset. (Robinson on Patents, § 1254; *Farr* v. *Morrill*, 53 Hun, 31; *Freeman* v. *Freeman*, 136 Mass. 260; *Somerby* v. *Buntin*, 118 Mass. 279; *Adams* v. *Messinger*, 147 Mass. 185; *Satterthwaite* v. *Marshall*, 4 Del. Ch. 337; *Slemmer's Appeals*, 58 Penn. St. 155; *Searle* v. *Hill*, 73 Iowa, 367.) A partnership to work a patent will be regarded as for the life of the patent, unless some other time be named in the articles of agreement. (*Gates* v. *Frazer*, 6 Ill. App. 229.) The question of abandonment was one of

fact, was litigated as such, and the finding of the referee will not be disturbed by this court. (Code Civ. Pro. § 1337; *Crim* v. *Starkweather*, 136 N. Y. 635; *Tannenbaum* v. *Armeny*, 81 Hun, 581.) The Millar contract was a firm asset, and the defendant was rightfully required to account for his dealings thereunder. (*Tannenbaum* v. *Armeny*, 81 Hun, 581, 585; *Weaver* v. *Barden*, 49 N. Y. 286, 289.) The referee rightfully required the defendant to account for all the spouts furnished by defendant to Millar & Son, whether delivered before or after the issue of the further patent of July, 1891. (*Holmes* v. *Gilman*, 138 N. Y. 369, 377; *Baldwin* v. *Von Micheroux*, 83 Hun, 43.) The allowance of interest by the referee was proper under the circumstances of the case. (*Holmes* v. *Gilman*, 138 N. Y. 369; *Bonn* v. *Steiger*, 2 N. Y. S. R. 90; *Barker* v. *White*, 58 N. Y. 204.)

Andrews, Ch. J. Some of the questions litigated on the trial have, by lapse of time, become of little practical importance. The patent of 1877 has expired during the pendency of the litigation, as has also the period during which, by the terms of the contract between Millar & Son and the firm of Willis & Spears, of January 18, 1887, that contract was to continue in force. The provision in the judgment, therefore, requiring the defendant to assign to the plaintiff, by formal assignment, a one-half interest in the patent of 1877, and the provision vesting in the receiver the contract of Millar & Son, have become unimportant. But the substantial question remains as to the liability of the defendant to account to the plaintiff for one-half of the gains realized by him from the sale of sap spouts by the defendant to Millar & Son in his individual name after January 1, 1888. The complaint alleges that in the year 1879 the defendant was the owner of letters patent No. 189,330, issued April 10, 1877, by the United States for an improvement in sap spouts, and in the year first mentioned entered into an agreement with the plaintiff whereby he sold to him an undivided half interest in the said patent for the sum of five hundred dollars, which sum was thereupon

paid by the plaintiff to the defendant, and whereby the parties entered into a co-partnership under the name of Willis and Spears to conduct the business of the manufacture and sale of sap spouts under said letters patent, each party contributing to the partnership his half interest in the patent and agreeing to furnish one-half of all necessary capital, and each to receive one-half of the profits. It alleges that the firm carried on the business contemplated until a short time before the commencement of the action; that the defendant now claims to be the sole owner of the patent, and has taken exclusive possession of the partnership business and prevents the plaintiff having access thereto; that the defendant refuses to execute an assignment to the plaintiff of a one-half interest in the patent in the form required by the rules of the patent office of the United States. The complaint, among other things, demands judgment that the defendant be required to execute a proper assignment of an undivided one-half interest in the patent to the plaintiff, for a dissolution of the co-partnership and an accounting.

The answer admits the formation of the co-partnership as alleged in the complaint, but (as amended on the trial) denies that the plaintiff paid the purchase price for the one-half interest in the patent, and avers that the agreement for the sale of the one-half interest therein was not in writing, and was for that reason invalid and did not transfer any interest therein to the plaintiff. The answer also alleges that soon after the making of the agreement alleged in the complaint the defendant made a new and improved sap spout, which he has since manufactured and sold, in which the plaintiff had no interest, and that but a few sap spouts were made under patent No. 189,330. The answer further alleges, in substance, that about three years before the commencement of the action the plaintiff abandoned the business and refused to have anything further to do with it.

The case was heard before a referee. It was undisputed that the parties carried on the business of manufacturing and selling sap spouts from 1879 to about January 1,

1888, under the firm name of Willis & Spears. Prior to 1887 the business was conducted in this way : The firm procured the sap spouts to be manufactured by a manufacturing corporation in Connecticut, and sales were made by the members of the firm, and through agents, as customers could be found. In January, 1887, the firm entered into a written contract with Millar & Son, of Utica, by which the latter firm agreed to take the whole output of Willis & Spears up to one hundred thousand sap spouts "during the life of the patent, about eight years," and to pay the price named therein. Thereafter the course of business was that Millar & Son, at the commencement of each season, would notify Willis & Spears of the number of sap spouts they required, Willis & Spears would notify the manufacturers in Connecticut, and the sap spouts would be forwarded from the place of manufacture directly to Millar & Son, who would then remit the price to Willis & Spears, who in turn would remit the cost of manufacture to the Connecticut corporation. This arrangement greatly simplified the business and but little personal attention was thereafter required on the part of Willis & Spears. In the fall of 1887 the plaintiff removed from Colton (in St. Lawrence county) to Canton, in the same county, and thereafter took but little, if any, part in the business of Willis & Spears. In the early part of 1888, Willis, without the knowledge of Spears, procured Millar & Son to cancel the written contract of January, 1887, and to substitute a verbal contract therefor of the same tenor, the only change in its terms being that Willis individually was substituted as the vendor of the sap spouts in place of Willis & Spears, and after this change Millar & Son accounted to Willis individually for sap spouts purchased by them. The referee decided that the defendant was bound to account to the plaintiff as co-partner for his share of the profits realized by Willis in the dealings with Millar & Son after January 1, 1888, and the correctness of the ruling is sharply contested by the defendant.

The partnership agreement was oral and the duration of the partnership was not expressed in the agreement between the

parties. The defendant concedes that by implication it was to continue during the life of the patent No. 189,330, which expired about 1895. But if it was a partnership at will, either because its duration was not fixed by the agreement, or for the reason that it was an oral agreement not to be performed within a year from its inception, nevertheless, it continued until it was dissolved by the act of one or both of the parties. It was claimed by the defendant that the removal of the plaintiff to Canton in the fall of 1887, and his thereafter ceasing to take any part in the business, was an abandonment by the plaintiff of the partnership and operated as a dissolution. The defendant also sought to establish that in the fall of 1887 he informed the plaintiff that he would no longer continue the partnership. It is sufficient to say that the referee refused to find that the plaintiff abandoned the business of the partnership, and his finding as to what was said between the parties in the fall of 1887 shows simply that while the defendant expressed an unwillingness to continue the business and divide the profits, and the plaintiff showed a willingness to sell his interest, there was only a naked proposition from either and that no change was effected in their relation as partners.

The dissolution of a partnership at will may be implied from circumstances. But when not the result of mutual agreement there must be notice by the party desiring a dissolution, to his co-partner, of his election to terminate the partnership, or his election must be manifested by unequivocal acts or circumstances brought to the knowledge of the other party, which signify the exercise of the will of the former that the partnership be dissolved. (2 Lindlay on Part. book 4, § 1, p. 572, and cases cited.) It is claimed in behalf of the defendant that the firm of Willis & Spears never conducted the business contemplated in the partnership agreement, namely, the manufacture and sale of sap spouts under patent No. 189,330 of 1887, and that the sap spouts which were supplied to Millar & Son were not covered by that patent, but were a new invention and

improvement, invented by the defendant, in which the
plaintiff had no interest. It is insisted, therefore, that the
firm of Willis & Spears, not having any interest in the new
invention, the defendant was authorized to terminate the con-
tract with Millar & Son, and thereafter supply them with
sap spouts on his own account. The sap spouts furnished
Millar & Son after January 1, 1888, were of the same descrip-
tion as those which Willis & Spears were manufacturing when
the contract of January, 1887, was made and which they fur-
nished to Millar & Son under that contract during that year, and
while the partnership of Willis & Spears (as conceded by the
defendant) was in existence. The referee found that the sap
spouts manufactured by the firm of Willis & Spears were not
made in strict conformity with the specifications of patent No.
189,330, but that at the commencement of the co-partnership
they were made after patterns furnished by the defendant,
which were embraced in the sale, and were used as a part of
the co-partnership property, and that from time to time alter-
ations and improvements were made in the spout manufactured
by the firm. We are unable to determine whether the prin-
ciple of the invention of 1877 was ever departed from in the
improvements of the spout subsequently made. But the evi-
dence is quite conclusive that the parties understood that the
patent of 1877 covered the spouts as changed from time to
time. They were stamped " Pat. 1877." The firm defended
an action for infringement by setting up their right acquired
under the patent of 1877. The circulars issued by the firm
contained a picture of the spout, substantially like the one
manufactured for Millar & Son, and some of them stated that
they were patented in 1877. In short, there were the most
unequivocal admissions on the part of the defendant, by his
acts and representations, that the spout manufactured by the
firm was the spout covered by the patent of 1877. The ref-
erence to a Canadian patent, contained in the evidence, does
not, so far as we can perceive, weaken the clear inference
from the facts above stated, that the spouts furnished to Mil-
lar & Son were covered by the patent of 1877. Even if

the fact was doubtful, the conduct of the defendant precludes him from now claiming that in manufacturing the spouts the firm was not engaged in the business contemplated by the partnership agreement, or that the written contract with Millar & Son, of January, 1887, did not relate to spouts covered by patent No. 189,330.

It is insisted, however, in behalf of the defendant that, assuming that the spouts were covered by that patent, nevertheless the plaintiff acquired no interest therein, because the agreement for the transfer to him of an interest in the patent was oral, and that under section 4898 of the Revised Statutes of the United States, which provides that " every patent or any interest therein shall be assignable in law by an instrument in writing," is in substance a declaration that no interest in a patent can be acquired in any other way. It is to be observed that the section speaks of the method of conveying legal interests in patents. It declares that patents and interests therein shall be " assignable in law " by an instrument in writing. It does not in terms preclude the acquisition of equitable interests in patents under oral contracts. Indeed, it seems to be well settled that oral agreements for the sale of patents may be enforced in equity in the same manner and under the same conditions as oral agreements relating to any other species of personal property or intangible rights. (*Burr* v. *De La Vergne*, 102 N. Y. 415 ; *Somerby* v. *Buntin*, 118 Mass. 279 ; *Searle* v. *Hill*, 73 Iowa, 367 ; Walker on Patents, § 274.) We think the circumstances disclosed made a case for the enforcement in equity of the oral contract of assignment. The parties on the faith of the agreement entered into and conducted the partnership for many years without any question being raised as to its validity. It would be manifestly inequitable to permit the defendant to deprive the plaintiff of the benefit of the agreement at this late day.

The referee reposing upon the rule that the burden of showing payment of the purchase price of the half interest in the patent rested upon the plaintiff, found that the fact was not established, the plaintiff testifying one way and the defendant

the other.   The defendant admitted the existence of the oral contract to assign, and that he had never demanded payment. But the parties acted upon the assumption that plaintiff was a half owner of the patent.   The judgment provides for a credit to the defendant of the purchase money and interest on the accounting, and this, we think, was all to which the defendant was in equity entitled.   The fact of non-payment under the circumstances ought not to defeat the right to equitable relief.   The conclusion of the referee, that the plaintiff was entitled to an account of the partnership transactions from and including the year 1888, and of all dealings of the defendant under the contract with Millar & Son of January, 1887, or under any contract in his own name in contravention thereof, or substitution therefor, legitimately followed from the facts found.   The contract of January, 1878, was valuable, and was an asset of the partnership.   The relation between partners is fiduciary, and the strictest good faith is required in their dealings with each other or with the partnership interests.   "All the partnership property (says Judge STORY, Sto. on Part. § 174) and partnership contracts should be managed for the equal benefit of all partners according to their respective shares and interests therein.   If, therefore, any one partner should stipulate clandestinely for any private advantage or benefit to himself, to the disadvantage or in fraud of his partners, he will in equity be compelled to divide such gains with them."   (See, also, 2 Kent's Com. 51.)

We find no error in the record, and the judgment should, therefore, be affirmed.

All concur.

Judgment affirmed.