of the state and into Pennsylvania. She might still have children by her Pennsylvania husband, who would be legitimate everywhere except in the state of New York, but who would become bastards here. The wretched consequences of such a decree are infinite. In Ransom v. Ransom, 125 App. Div. 915, 109 N. Y. Supp. 1143, Judge Laughlin, in the course of a protest against the continued existence of such possibilities, suggests that it might be competent for the trial court to refuse to grant a decree under such circumstances. But, having made the suggestion, he is at once assailed by a well-founded doubt of its propriety, and adds that:

"It would seem that the Legislature of our own state, at least, should revise the laws with respect to granting divorces, and confine the authority of the courts to cases where jurisdiction can be obtained which will insure the validity of the divorce, not only in the state where granted, but in every other state and territory."

It seems reasonably clear, from the situation disclosed above, arising under subdivision 2 of section 1756 of the Code, that the divorce statute is also in need of overhauling in other respects.

---

KLAUDER–WELDON DYEING MACH. CO. v. WELDON et al.

SAME v. GILES.

(Nos. 39–57, 39–58.)

(Supreme Court, Appellate Division, Third Department. March 3, 1915.)

1. PATENTS (§ 195*)—CONTRACT OF SALE—FUTURE INVENTIONS.

A corporation which, at the time it employed an inventor, who was a large stockholder therein, as its manager, at a fixed salary and a percentage of the net profits, also purchased from him for an additional consideration the patents which had been granted to him for inventions, all applications pending, and inventions now made or to be made in the future, was entitled to assignments of the patents for inventions by the manager made thereafter, though they were not in contemplation at the time the contract was made, especially where the manager had made use of those inventions for the benefit of the corporation, without making any additional claim for them.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 272–274; Dec. Dig. § 195.*]

2. SPECIFIC PERFORMANCE (§ 105*)—ASSIGNMENT OF PATENTS—LACHES.

The corporation was not guilty of laches in relying upon its rights under the contract and not requiring an assignment of the patents for the subsequent inventions.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 325–341; Dec. Dig. § 105.*]

3. SPECIFIC PERFORMANCE (§ 24*)—ASSIGNMENT OF PATENTS—ESTATE OF PATENTEE.

Since an assignment of the patents so as to vest the legal title thereto in the corporation was a part of their value, and the manager's estate had received the benefit of his contract with the corporation, equity can decree a specific performance of that contract by ordering assignments to be executed by the representatives of the inventor after his death.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 54, 55; Dec. Dig. § 24.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. LIMITATION OF ACTIONS (§ 66*)—SPECIFIC PERFORMANCE—ASSIGNMENT OF
PATENTS.
    The statute of limitations does not run against a suit to compel the
specific performance of that contract, so long as the corporation was al-
lowed to use the patents without objection from the patentee.
    [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§
353–375; Dec. Dig. § 66.*]

Appeal from Trial Term, Montgomery County.

Separate actions by the Klauder-Weldon Dyeing Machine Company
against Katherine Weldon and another, as executrix and executor of
the last will and testament of Leonard Weldon, deceased, and against
John H. Giles, to compel the specific performance of a contract to as-
sign certain patent rights to the plaintiff. Judgment for plaintiff in
both actions (87 Misc. Rep. 95, 150 N. Y. Supp. 273), and defendants
appeal. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOW-
ARD, and WOODWARD, JJ.

Christopher J. Heffernan, of Amsterdam, for appellants.

Duell, Warfield & Duell, of New York City (R. W. France, of
New York City, of counsel), for respondent.

WOODWARD, J.   These two actions involve the same questions
of law, the only difference in the cases being that the defendant Giles
claims rights under assignments from the defendants in the other
case, both involving certain letters patent. The cases were tried to-
gether, and were disposed of as one case, and will be so treated here.

Prior to the year 1893 the Klauder-Weldon Dyeing Machine Com-
pany was a Pennsylvania corporation, engaged in the manufacture of
machinery for dyeing purposes. This corporation was organized in
the year 1890, and Leonard Weldon, an inventor and man of large
experience in the manufacture of machinery, was chosen as vice pres-
ident and business manager of the company, which position he held
continuously down to the year 1901, when he died. On the 3d day of
January, 1893, at a regular meeting of the board of directors, the
salary of the general manager was fixed at $5,000 per year, with 30
per cent. of the net profits made in America over and above $25,000,
and there is no evidence in the case to show any change in this com-
pensation. Mr. Weldon was a large stockholder in the corporation,
such stockholdings being based upon his inventions used in the manu-
facture of machinery, and it will thus be seen that he was peculiarly
interested in the success of the enterprise. The value of his stock-
holdings, as well as the amount of his yearly compensation, hinged
upon the volume of business transacted. He was more than a stock-
holder. He had a partnership interest in the net profits with the
corporation itself, and the question to be determined in this litigation
is to be examined in connection with his special relations to the cor-
poration.

On the same day that his salary and compensation was fixed by the
board of directors the corporation held its annual meeting, and at
such meeting J. H. Giles, the defendant in the second action, who was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

then a director of the corporation, and who presumptively knew all of the affairs of the company, offered a resolution, the record of which is found in the books of the corporation as follows:

"Mr. J. H. Giles moved that the company purchase from Mr. Leonard Weldon, for the sum of $3,000, all patents that have been granted him in this and other countries since the organization of the company and for all applications pending, inventions now made or made in the future, and the treasurer be directed to pay him this sum on the completion of assignment papers. Unanimously adopted, 1,740 shares voting."

Mr. Weldon appears to have been present at both meetings, and it is obvious that the two transactions, while performed by different bodies in name, were in effect but a single transaction, by means of which it was sought to secure to the corporation the control of the Weldon inventions in connection with the manufacture of the machines, all of which were closely identified with him. The $3,000 was paid to Mr. Weldon by note on the 2d day of February, 1893, the note being subsequently paid, and on the 21st day of February of the same year Mr. Weldon made formal assignments of the various applications for patents then pending, and upon which patents were subsequently issued; the number being five. Subsequently Mr. Weldon made further improvements upon these machines for which letters patent were issued to him, and the improvements were incorporated into the product of the corporation and entered into the value of business upon which Mr. Weldon was paid, it may be assumed, the 30 per cent. of net profits, as general manager, in addition to his dividends upon stocks owned by him in the corporation.

These inventions were made by Mr. Weldon while in the employ of the corporation, were made in the factory of the corporation, using its materials and employés in the work and in testing the operations of the same, and this litigation arises because of the fact that Mr. Weldon in his lifetime, though using these inventions in connection with the business, and receiving his special compensation on account of the same, failed to make an assignment of the same to the corporation. He died in 1901. The corporation continued to make use of the inventions in connection with its product. The machines for a number of years bore the plate announcing that the machines were built under these patents, and when, in 1901, a New York corporation was organized to take over the Pennsylvania company, these patents, with others, were duly assigned and transferred to the new corporation; no one apparently making any suggestion that they were not the property of the Pennsylvania corporation. It was not until the year 1913 that the defendant Giles, who had been general manager since the death of Mr. Weldon, was superseded, and then the present controversy developed; the representatives of Mr. Weldon refusing to make the formal transfer of the letters patent involved in this litigation, thus completing the legal title.

[1] The learned court below has so fully covered the details of the controversy that it does not appear necessary to go over the ground again. It is sufficient to say that under well-recognized rules the plaintiff company has a perfect equitable right to these letters patent. Somerby v. Buntin, 118 Mass. 279, 287, 19 Am. Rep. 459; Burr v.

De La Vergne, 102 N. Y. 415, 422, 7 N. E. 366; Spears v. Willis, 151 N. Y. 443, 451, 45 N. E. 849. It not only paid $3,000 for "all patents that have been granted him in this and other countries since the organization of the company, and for all applications pending, inventions now made or made in the future," but it contracted in effect to share with the inventor the profits of his inventions; and to suggest at this time, after Mr. Weldon has had all of the benefits contemplated by the contract, after he had himself placed a practical construction upon the arrangement by making use of the inventions without suggestion of having any other interest in them than that which belonged to him in his relations to the corporation, that this contract of 1893 related only to the patents then in contemplation, is hardly worthy of serious consideration. There was a large corporation, doing an international business, and it was right and proper that the corporation should seek to protect itself by guaranteeing to it the benefit of future inventions.

[2] To this end it not only contracted to share in the net profits, but it paid a definite sum of money for all patents then pending or those to be hereafter applied for, and the corporation has not been guilty of laches, because it has relied upon its equitable right to continue the same use of such inventions which Mr. Weldon had, by his own acts, conceded to belong to it. So long as no one questioned its right to use the inventions in the manner that Mr. Weldon had used them as general manager of the corporation under his contract for profit sharing, there did not appear any particular reason why the corporation should insist upon a legal title.

[3] It must be assumed that the estate of Mr. Weldon has had the benefit of the increased value of the stocks due to these inventions, and, when the plaintiff demanded the legal title contemplated by the contract, it was the duty of the defendants to complete the transaction, just as it would have been the duty of Mr. Weldon to have done so on demand at any time during his own lifetime or the life of the patents. The contract contemplated the vesting in the corporation of the value of the inventions, whenever made; and as the legal title is a portion of that value, for which Mr. Weldon or his estate had been paid, it is clearly within the power of a court of equity to decree performance of the contract. Spears v. Willis, 151 N. Y. 443, 451, 45 N. E. 849, and authorities there cited.

[4] The statute of limitations has no legitimate relation to such a situation. The plaintiff was enjoying all of the rights necessary to its business as a manufacturing corporation without objection on the part of any one, and under circumstances which, except for infringements or licenses to third persons, could not be interfered with under the naked legal title. The defendants could not gain the equitable right to make use of the inventions by any delay on the part of the plaintiff, and it would be strange if, under such circumstances, a court of equity should be barred from the power to compel the defendants to perform their part of a contract for which they have been receiving the consideration all through these years.

The judgment appealed from should be affirmed, with costs. All concur.