F. L. G. STRAUBEL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56867. Promulgated December 6, 1933.

*B. L. Parker, Esq.*, and *F. N. Trowbridge, Esq.*, for the petitioner.
*J. E. Marshall, Esq.*, for the respondent.

OPINION.

McMAHON: This is a proceeding for the redetermination of a deficiency in income taxes for the calendar year 1927 in the amount of $18,258.03.

In the petition there are alleged as errors:

A. The failure of the Commissioner to find, as to stock received by the petitioner in exchange for patents and inventions in 1927, that it was received in an exchange tax free under Section 203 (b) (4) of the 1926 Law, and his failure to exclude the value of said stock from the income of the petitioner for 1927.

B. The failure of the Commissioner to exclude (or deduct) from the gross income of the taxpayer, the sum of $45,000.00, being the value of certain stock issued to two other parties in connection with the said exchange.

The petitioner is an individual with residence at Green Bay, Wisconsin.

In 1901 he, with his brother, O. C. Straubel, started in a small way in the business of manufacturing filing cabinets, desks, and office supplies in Green Bay, Wisconsin. The petitioner furnished what little money was had at the start and O. C. Straubel made the cabinets. The business was conducted as a partnership until 1907, when it was incorporated under the name of the Automatic File & Index Co., hereinafter referred to as the company or the corporation. Thereafter the petitioner and O. C. Straubel continued as stockholders. The petitioner was president of the company. Prior to incorporation, the company had manufactured a flat sheet file under a patent which had been issued to the petitioner. After

incorporation that particular patent was not used, because it was obsolete. After incorporation other patents were issued in the name of the petitioner, which were used by the company.

In 1911 the petitioner's son, C. W. Straubel, began working for the company at full time. He started at the bottom and became, successively, salesman, sales manager, and secretary of the company. He held the position of secretary through the year 1927. He also had many other duties. It was a part of his duties to call on customers, and he frequently brought back to the plant ideas for improvements and developments. The petitioner, his brother, and his son worked together very closely.

O. C. Straubel was factory superintendent of the company, his duties being mainly manufacturing and running the plant. Blueprints and also verbal statements were given to him for development.

The following patents were issued in the name of the petitioner:

| Improvement patented | Patent No. | Date issued | Improvement patented | Patent No. | Date issued |
|---|---|---|---|---|---|
| Vertical filing drawers | 1013234 | Jan. 2, 1912 | Filing trays | 1477783 | Dec. 18, 1923 |
| File cabinets | 1083304 | Jan. 6, 1914 | Pedestaled desks | 1498132 | June 17, 1924 |
| Desk tray sets | 1303985 | May 20, 1919 | Vertical filing drawers | 1561752 | Nov. 17, 1925 |
| Desk tray racks | 1319431 | Oct. 21, 1919 | Guide rods for file drawers | 1567874 | Dec. 29, 1925 |
| Desk drawer files | 1350186 | Aug. 17, 1920 | | | |

Four of the patents or the applications for such patents above set forth, namely, Nos. 1013234, 1083304, 1303985, and 1319431, were used by the company between the years 1907 and 1918. There was no written agreement regarding the use of these patents or applications by the company. The company did not pay the petitioner anything for the use of these patents or applications between 1907 and 1918. After 1918, the company continued to use these patents or applications.

The remainder of the above listed patents, namely, Nos. 1350186, 1477783, 1498132, 1561752, and 1567874, were not used by the company until after 1918. There was no written agreement with the company for the use of these patents. From 1918 to 1921, inclusive, the company paid the petitioner royalties for the use of such patents or applications in the amount of $500 a year. Thereafter the royalties which were paid by the company were paid to the petitioner, O. C. Straubel and C. W. Straubel. The royalties paid to the three were as follows:

| | 1922 | 1923 | 1924 | 1925 | 1926 | 1927 |
|---|---|---|---|---|---|---|
| Petitioner | $500 | $750 | $1,000 | $1,000 | $1,500 | $1,500 |
| C. W. Straubel | 250 | 250 | 500 | 500 | 500 | 583.33 |
| O. C. Straubel | 250 | 250 | 500 | 500 | 500 | 333.34 |

By 1926 the business of the company had expanded considerably and overtures had been made by outside interests to purchase it. One interested party, in particular, had been trying to buy the business principally to get the patents. Due to the fact that it was contemplated that the business might be sold, it was decided that it would be advisable for the company to buy the patents.

The petitioner, his brother, and his son worked together very closely on a number of the patents. C. W. Straubel conceived the idea of a lift-out tray and drew pictures of it when he was on a trip. When he returned to the factory, a discussion was had and the petitioner obtained the basic patent upon it with some of C. W. Straubel's ideas. This lift-out tray is covered by Patent No. 1477783. It became a valuable part of the line of the company.

A number of discussions were had by the petitioner, C. W. Straubel and O. C. Straubel with reference to the interests in the patents issued to the petitioner. These discussions occurred at various times and some were as early as 1922. The substance of these discussions was that it was agreed that C. W. Straubel and O. C. Straubel were to have an interest in all of the patents, and that although the patents were issued from time to time to the petitioner, nevertheless the other two were to have an interest in all the patents as issued. When, in 1927, disposition of the patents to the corporation for stock was considered, C. W. Straubel and O. C. Straubel insisted that they had certain interests therein. The petitioner at first insisted that he should receive $100,000 in stock of the company which was to be issued, but he finally agreed that he should receive stock of the agreed valuation of $90,000 and that C. W. Straubel and O. C. Straubel should receive stock of the agreed valuation of $45,000 between them—that is, petitioner was to take two thirds of the consideration received and C. W. Straubel and O. C. Straubel were to get the remaining one third of the consideration. C. W. Straubel and O. C. Straubel then agreed between themselves that C. W. Straubel was to receive two thirds of such remaining consideration (two ninths of the whole consideration) and that O. C. Straubel was to receive one third of the remaining consideration (one ninth of the total consideration). This determination was finally arrived at just before the meeting of the stockholders and directors of the company in August 1927 at which the purchase of the patents was considered.

The petitioner submitted in writing to the corporation a proposal for the sale of the patents listed hereinabove, together with other applications and inventions. Such proposal is not dated, but is contained in the minutes of a special meeting of the stockholders of the corporation held on August 15, 1927. In such proposal the petitioner stated in part:

There are nine patents under which we are operating and three more applied for, also two inventions that are patentable, all of which would under the proposed arrangement become the property of the company.

My price for my entire interest in these patents, patents applied for and patentable inventions is $135,000, which with the assistance and cooperation of my active associates I have decided to distribute as shown by the following schedules, together with a list of stockholders with present and final holdings: * * *

In the proposal the petitioner proposed that the stock in payment for the patents, patent applications, and the inventions should be paid as follows:

To F. L. G. Straubel, 552 shares of common stock and 210 shares of preferred stock.

To C. W. Straubel, 240 shares of common stock.

To O. C. Straubel, 150 shares of preferred stock.

The minutes of the special stockholders' meeting held on August 15, 1927, contain the following:

Whereas, F. L. G. Straubel, C. W. Straubel and O. C. Straubel are personally interested in such patents and are willing to sell the same to the company for One Hundred and Thirty-five Thousand Dollars ($135,000), payable in the common and preferred stock of this company, viz., 792 shares of common stock and 360 shares of preferred, * * *

Therefore, BE IT RESOLVED that this company purchase the said patents affecting its product for the sum of $135,000, payable in the stock of this company, to wit, 792 shares of common stock and 360 shares of preferred stock.

The resolution also provided that the stock should be issued to the petitioner, C. W. Straubel and O. C. Straubel in the proportion proposed by the petitioner in his proposal to the corporation.

The petitioner approved these minutes in writing as follows: "Approved: F. L. G. Straubel, Pres."

On September 14, 1927, the petitioner wrote a letter, headed "Assignments of Patents," to the Commissioner of Patents, wherein, in reference to certain listed patents, he stated in part:

* * * whereas I am now the sole owner of said patents * * *. Now, therefore, * * * I, Frederick L. G. Straubel, by these presents do sell, assign, and transfer unto the said The Automatic File & Index Co., the whole right, title and interest in and to the said letters patent * * *.

The petitioner, C. W. Straubel and O. C. Straubel each received, on September 1, 1927, the stock of the corporation as contemplated by the resolution of the stockholders at their meeting of August 15, 1927. Two hundred shares of the preferred stock paid to the petitioner were taken in the names of Dorothy and Marjorie Straubel.

Immediately prior to the transfer of these shares to petitioner, his brother, and his son, the stockholdings in the corporation were as follows:

| Stockholder | Shares of common stock | Shares of preferred stock |
|---|---|---|
| F. L. G. Straubel | 534 | |
| M. J. Heath | 350 | 20 |
| O. C. Straubel | 335 | |
| C. W. Straubel | 138 | |
| P. K. Holbrook | 4 | 40 |
| R. Puchner | 3 | 30 |
| Total | 1,364 | 90 |

After the transfer in question the stockholdings in the corporation were as follows:

| Stockholder | Shares of common stock | Shares of preferred stock | Stockholder | Shares of common stock | Shares of preferred stock |
|---|---|---|---|---|---|
| F. L. G. Straubel | 1,086 | [1] 210 | P. K. Holbrook | 4 | 40 |
| O. C. Straubel | 335 | 150 | R. Puchner | 3 | 30 |
| C. W. Straubel | 378 | | | | |
| M. J. Heath | 350 | 20 | Total | 2,156 | 450 |

[1] 200 of these shares in the names of Dorothy and Marjorie Straubel.

In determining the deficiency for the year 1927, the respondent included in petitioner's taxable income a gain on the transfer of the patents to the company in the amount of $129,049.42.

The respondent determined that the petitioner was the sole owner of the patents, patent applications, and patentable inventions transferred to the company in 1927 in exchange for stock, and held that the petitioner derived a gain of $129,049.42 upon such transaction. The petitioner contends that the transaction constituted such a transaction as is contemplated by section 203 (b) (4) of the Revenue Act of 1926, in which no gain or loss is recognized for income tax purposes. Section 203 (b) (4) and section 203 (i) of the Revenue Act of 1926 are set forth in the margin.[1] Petitioner contends that the property transferred to the corporation was owned by himself, his brother, O. C. Straubel, and his son, C. W. Straubel; that the stock received by each was substantially in proportion to his interest in the property prior to the exchange; and that immediately after the

[1] SEC. 203. (b) (4) No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to exchange.

SEC. 203. (i) As used in this section the term "control" means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

exchange he, his brother, and his son were in control of the corporation. It is the position of the respondent that the transaction is not one in which gain or loss is to be ignored for income tax purposes, since the petitioner, who, respondent contends, was the sole owner of the property prior to the transfer, was not in control of the corporation after the transaction within the meaning of the statute.

The evidence discloses that as a result of numerous discussions among the three individuals, some of which were held as early as 1922, it was orally agreed that C. W. Straubel and O. C. Straubel were to have an interest in all of the patents and that although the patents were issued from time to time to the petitioner, nevertheless the other two individuals were to have an interest in all the patents as issued. In 1927, when the question of disposing of the patents to the corporation was considered, the question of the proportionate interest of each therein was considered and definitely settled. It was decided that the petitioner owned a two-thirds interest, that C. W. Straubel owned a two-ninths interest and that O. C. Straubel owned a one-ninth interest. These proportions were agreed to among the parties orally.

While, under the United States Revised Statutes, legal title in a patent can not be conveyed except in writing, equitable title therein may be transferred by oral contract; and such assignment is valid as against the assignee of the legal title who takes with knowledge of the equitable assignment, as was done in the instant proceeding. *Dalzell* v. *Deuber Watchcase Mfg. Co.*, 149 U.S. 315; *Spears* v. *Willis*, 151 N.Y. 443; 45 N.E. 849; *Blakeney* v. *Goode*, 30 Ohio St. 350; *Whitcomb* v. *Whitcomb*, 85 Vt. 76; 81 Atl. 97; *Searle* v. *Hill*, 35 N. W. 490 (Ia.); *Whitney* v. *Burr*, 115 Ill. 289; 3 N. E. 434. Under an agreement that a patent is to be taken out in the joint names of two or more persons, or for their joint benefit, the parties are, in equity, joint owners. *Duke* v. *Graham*, 19 Fed. 647; *Whiting* v. *Graves*, 29 Fed. Cases #17577; and *Blakeney* v. *Goode*, *supra*. And an invention may be assigned before application for a patent thereon is made, the assignee taking equitable title in the invention. *American Bank Protection Co.* v. *City Natl. Bank*, 181 Fed. 375.

In the light of the above authorities it is our opinion that here the petitioner, prior to the transfer of the patents, patent applications, and patentable inventions to the corporation, effected a valid oral assignment of equitable interests therein to C. W. and O. C. Straubel. It appears that such assignment was made as early as 1922 or earlier, and in conformity therewith, from 1922 until 1927, C. W. and O. C. Straubel each received royalties from the corporation for the use of the patents, patent applications, and patentable inventions; and prior to the date that such patents, patent applications, and pat-

entable inventions were assigned to the corporation it was established by oral agreements among the parties that the petitioner had a two-thirds equitable interest therein, that C. W. Straubel had a two-ninths equitable interest therein, and that O. C. Straubel had a one-ninth equitable interest therein. We are satisfied that such were the interests therein immediately prior to the transfer of the property to the corporation and not later than August 15, 1927, and considerably before the formal written assignment of the legal title by the petitioner to the corporation of certain patents under date of September 14, 1927.

Counsel for the respondent stresses the fact that in this assignment the petitioner recited, " I am now the sole owner of said patents ", and that he therein stated that he thereby assigned and transferred " the whole right, title and interest in and to the said letter patents." That assignment dealt with the legal title which the petitioner held. It is not inconsistent with the view that certain equitable interests were held by others. The petitioner was the record holder of the legal title and his letter to the Commissioner of Patents was therefore worded to conform to the records. It is to be noted that in his proposal to the stockholders, the petitioner stated that the consideration to be received was to be distributed not only to himself, but also to C. W. and O. C. Straubel. It is also to be noted that the corporation, of which the petitioner was president, recognized the interests of C. W. and O. C. Straubel by stating in the notice to stockholders that the " owners of the patents have agreed to sell them to the corporation and take stock in the corporation in payment therefor," and by providing for the payment of the stock to the three individuals and by reciting in the preamble of the resolution set forth in its minutes of August 15, 1927, *all of which were approved by the petitioner in writing*, as follows: " Whereas, F. L. G. Straubel, C. W. Straubel and O. C. Straubel *are personally interested in such patents* * * * [Italics ours].

We have not overlooked the testimony of L. E. Houston to the effect that petitioner subsequent to 1927 told him that " he was the sole owner of those things that were behind the manufacture of this product and the sole inventor of them." In view of the other proof in this proceeding, this statement made by the petitioner to Houston does not justify a holding that C. W. and O. C. Straubel did not own equitable interests in the patents, applications, and inventions transferred to the corporation. This testimony of Houston is not inconsistent with our view that petitioner held the legal title to the patent rights in question while C. W. and O. C. Straubel owned equitable interests therein, as heretofore pointed out.

Upon the exchange the petitioner received two thirds of the stock, C. W. Straubel received two ninths of the stock and O. C. Straubel received one ninth of the stock upon the basis of the valuation thereof (both preferred and common) agreed upon by the corporation and the individuals. Such valuation is not disputed by the respondent, but, on the contrary, was adopted by him in the determination of the deficiency herein. Of the total number of shares issued for these patents, the petitioner received approximately 66 percent, C. W. Straubel received approximately 21 percent, and O. C. Straubel received approximately 13 percent. It is thus to be seen that upon either basis of calculation the amount of stock received by each was substantially in proportion to his interest in the property prior to the exchange.

After the transaction in question there were outstanding 2,156 shares of common stock of the corporation, of which these three individuals owned 1,799 shares or 88.44 percent. After the transfer there were outstanding 450 shares of preferred stock, of which these three individuals owned 360 shares or 80 percent. Thus, these three individuals were in control of the corporation after the exchange within the meaning of " control " as defined in section 203 (i) of the Revenue Act of 1926.

We hold that no gain or loss is to be recognized upon the transaction in question, and that no part of the amount of $129,049.42 should be included in the gross income of the petitioner for the year 1927.

*Decision will be entered under Rule 50.*