Associated Patentees, Inc. v. Commissioner.
Associated Patentees, Inc. v. Commissioner
Docket No. 112051.
United States Tax Court
1943 Tax Ct. Memo LEXIS 135; 2 T.C.M. (CCH) 718; T.C.M. (RIA) 43407; August 31, 1943
*135 Howe P. Cochran, Esq., 705 Colorado Bldg., Washington, D.C., and Margaret F. Luers, Esq., for the petitioner. Jonas M. Smith, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves deficiencies in income tax in the amount of $10,350.66, declared value excess-profits tax of $964.78, and personal holding company surtax of $34,603.05, for the calendar year 1940. The petitioner filed its returns for those taxes for the period involved with the collector of internal revenue for the fifth district of New Jersey. The issues are (1) whether royalties received by petitioner in the tax year are properly includable in its gross income for that year, and, if so, (2) whether amounts paid by petitioner from those royalties are deductible by petitioner as ordinary and necessary expenses in the form of royalties paid by it and, if not so deductible, (3) whether petitioner is entitled to a dividends paid credit for the amount thus paid under section 27, Internal Revenue Code, and (4) whether petitioner was a personal holding company as defined by section 501 of the Internal Revenue Code. Findings of Fact The petitioner is a business corporation *136 organized in 1933 under the laws of the State of New Jersey. Its principal place of business was in East Orange, New Jersey. Its authorized capital stock consisted of 100 shares of common without par value. All shares were issued. In about 1928 or 1929, Alwyn E. Borton, Frederick Koch, Walter P. Powers, all inventors and holders of patent rights, together with Cecil Todd, a financier, entered into an oral agreement to pool the patents and inventions on an equal share basis of one-quarter to each. They caused the petitioner to be formed. Each became an officer and director of the corporation. At the first meeting of the directors held on January 14, 1933, the aforementioned individuals made an offer to sell, assign and transfer to the petitioner all of their right, title and interest in and to twenty patents in exchange for the 100 shares of the capital stock of the petitioner. The directors, by resolution, accepted the offer. On January 16, 1933, these individuals executed and delivered to the petitioner a written assignment of twenty patents, designated therein by number, date of issue, and a brief description thereof. Thereupon the petitioner caused to be issued to each of these *137 assignors twenty-five shares of its capital stock of no par value. On January 16, 1933, the individuals trusteed their respective shares of said capital stock to one William Dunkel. Subsequent to the incorporation of the petitioner and pursuant to their pooling arrangement, certain other patents were similarly assigned from time to time to the petitioner without fixing the consideration therefor because it was then impossible to approximate their value since they had not yet been used commercially. Under date of October 15, 1934, the petitioner entered into a written agreement with the U.S. Tool Co., Inc., which agreement contains, inter alia, the following provisions: WHEREAS, The U.S. TOOL is desirous of using certain patents, trade marks, etc. now owned by the ASSOCIATED PATENTEES: and WHEREAS, The ASSOCIATED PATENTEES are willing to grant to the U.S. TOOL exclusive right to use the patents, trade marks, etc. in question; * * * * *
1. In consideration of the complete payment of all expenses in connection with the obtaining and development of the said patents. trade marks, etc., the ASSOCIATED PATENTEES agree that the U.S. TOOL shall have the exclusive use of the said *138 patents, trade marks, etc. for a period of five (5) years from the date of this agreement subject to the following provisions. 2. It is understood that the U.S. TOOL shall in no way transfer, assign or sell its right to use said patents, trade marks, etc. herein granted. On November 23, 1938, a modification was made to paragraph 2 of this agreement allowing U.S. Tool, Inc., to permit the General Electric Company the use of certain of the patents. On October 10, 1939, the petitioner entered into a new and more comprehensive general licensing agreement with the U.S. Tool Company, Inc. This agreement contained, inter alia, the following provisions: WHEREAS, said Licensee has been and is now manufacturing and selling various articles manufactured under the terms of a license agreement involving various patents, inventions, etc., trademarks, etc., dated October 15, 1934, granted by Licensor, which said license agreement expires October 15, 1939; and WHEREAS, in order to encourage the building up of a market for products manufactured under the patents, etc. as set forth in the said agreement, and others subsequently included under the same terms by oral agreement, said Licensor *139 did not, under the terms of the existing license, require the payment of any royalties on the said license other than the payment of development expenses, as set forth in the said agreement, but it is now apparent to both Licensor and Licensee that there are prospects of substantial business from the sale of articles produced under the patents, etc. covered by the said license, said Licensee has agreed that a royalty of five per cent (5%) on the gross sales of products manufactured under such license is fair in addition to the continued payment of any development expenses on patents, inventions, etc. covered by the present license or which may hereafter be included in a future license; and WHEREAS, Licensor is willing to grant a new license covering all the patents, inventions, trademarks, etc. including in the present agreement, as well as any that may be subsequently added by mutual agreement, either in writing or orally, on the terms hereinafter set forth; NOW, THEREFORE, in consideration of the sum of One Dollar ($1.00) paid to each other, receipt of which is hereby acknowledged, and of the mutual covenants and agreements hereinafter set forth, said parties have agreed as follows:
*140 1. LICENSE AND RENEWAL PROVISION. Licensor hereby gives and grants unto the Licensee, subject to the conditions hereinafter set forth, the exclusive right and license to manufacture, have manufactured for it, and sell, and sell to others for use or sale throughout the United States, its territories and colonial possessions, the various products referred to above under the patents or applications or inventions, etc. as listed in the Schedule annexed to this agreement and under any patent or patents that may hereafter issue for inventions set forth in any applications now pending or which may hereafter be pending, or any reissue thereof, and under any patent or patents for such articles that may hereafter be acquired, obtained or controlled by the Licensor in anywise related to the aforesaid patents, provided that any such after-acquired patents, inventions, or trademarks not specifically set forth in this agreement may be covered by the terms of this agreement if mutually agreed to by the parties hereto, either in writing or orally. Such license shall extend from October 15, 1939 to October 15, 1941 unless earlier terminated as hereinafter provided. It is mutually agreed that *141 unless notice is given by either party to the other, as hereinafter provided, on or before April 15, 1941 that such party does not desire to renew the agreement, then this agreement shall automatically be renewed for a period of one year from October 15, 1941, and thereafter shall automatically renew itself each year unless and until such six months' prior notice is served by either party in any year that such party does not desire to renew the agreement. Any such notice shall be sent by registered mail to the above addresses unless a new address shall have been furnished prior to the sending of such notice. This provision for automatic renewal is subject to the other provisions hereinafter referred to in this agreement relating to cancellation or termination. All of the rights covered by this license are hereinafter collectively referred to as "license rights". 2. ROYALTIES. Said Licensee agrees that during the continuance of this agreement it will pay to the said Licensor. its successors or assigns, royalties on the devices or products manufactured and/or sold by Licensee, or anyone deriving rights through Licensee, which royalty shall be at the rate of five per cent (5%) *142 of the gross sales of products manufactured by any of such parties under the said license rights; the said payments or royalties shall become due and be paid on the 15th of each month for shipments made or paid for up to and including the last day of the preceding month, to which royalty dates the accounts hereinafter provided for are to be made up. The period in which the said royalties shall be computed shall begin on October 15, 1939. The gross sales price hereinabove referred to shall not be interpreted to include customary discounts allowed by Licensee on sales of articles covered by this agreement. In addition to the above mentioned percentage on the gross sales, Licensee agrees that as part of the consideration for the said license, it will, during the continuance of this agreement, continue to make complete payment of all expenses in connection with the obtaining and developing of any patents, inventions, trademarks, etc. covered by this agreemet, as set forth in the annexed Schedule, or which shall hereafter be brought within the terms of this license by mutual agreement of the parties, either orally or in writing. On September 1, 1939, a special meeting of the Board of *143 Directors of petitioner adopted the following resolution: A special meeting of the Board of Directors of the Associated Patentees, Inc. was held at the Office of the Company, 19th Street and Springdale Avenue, Ampere (East Orange), New Jersey, on Friday, September 1, 1939 at 2 P.M., proper notice having been sent to the Directors in accordance with the By-Laws. The following directors were present: C. Todd, Alwyn E. Borton, F. Koch and W. P. Powers. The meeting was called to order by the President, Mr. Borton. On motion duly made and seconded it was unanimously RESOLVED, that the Secretary be, and hereby is authorized and directed to rent a safe deposit box from the Ampere Bank and Trust Company, East Orange, N.J. it being understood that access to said box shall be granted to any two of the present Directors of the Company who are C. Todd, Alwyn E. Borton, F. Koch and W. P. Powers. On motion duly made and seconded it was unanimously RESOLVED, that the President and Secretary of this Company be and hereby are authorized to negotiate and enter into a new license agreement with the U.S. Tool Company, Inc., to succeed the present agreement which expires on October 15, 1939, providing *144 for the licensing of the manufacture and sale of products covered by patents, inventions, trademarks, etc. owned or controlled by this Company on terms of 5% royalty on gross sales plus development expenses as at present, the other terms to be as approved by said officers, it being the understanding of this Company with its four stockholders, C. Todd, Alwyn L. Borton, F. Koch and W. P. Powers, that as partial compensation for patents, inventions, ideas, etc. turned over to this Company by them since the incorporation of this Company, one-fifth of any cash royalties actually received by this Company is to be paid over to each of said individuals, and that each of said individuals, while acting as an officer of this Company, is to receive a salary of $1,500.00 per year as compensation for such services, if the cash income received by this Company during any such year is sufficient to pay such salaries after the payment of 80% of said royalties, and that in case such income is insufficient to pay such salaries in full, any reduction shall be pro-rated among the four officers. On motion duly made and seconded the meeting adjourned. /s/ W. P. Powers Secretary At a special meeting of *145 the directors of the petitioner held on December 16, 1940, the following resolutions were adopted: On motion duly made and seconded, it was unanimously RESOLVED: 1. That the salaries of the officers for the year 1940 in the amount of $1500.00 each be paid before the close of business December 31, 1940. On motion duly made and seconded, it was unanimously RESOLVED: 2. That the Treasurer be, and hereby is instructed to distribute on or before December 31, 1940 as dividends all available income after paying salaries and other obligations. Mr. Todd brought up the fact that in reviewing the Minutes of previous Meetings, that the Minutes of the Special Meeting of the Board of Directors of September 1, 1939 did not clearly express the arrangement between the four Officers of the Company and the Company regarding patents turned over to the Company by them. The arrangement was that the payment to them of 80% of the Annual Royalties received from the patents, inventions, etc. that were turned over to us by them was to pay them for the use of such patents, etc. during the year in which such royalties are received, and for keeping such patents, etc. active and up to date, and such 80% was *146 not paid to them in whole or in part as purchase money for such patents and inventions, etc. It was also understood that the 80% of royalties received on such patents was to continue for the life of the patents, and any extensions thereof. Mr. Todd said that at the time he noticed this ambiguity he made notations on the Minutes accordingly, and now wishes to have this properly stated in these Minutes. On motion duly made and seconded, it was therefore RESOLVED: That these statements be included in these Minutes. The following instrument was executed by the petitioner and the four individuals: WHEREAS, since January 14, 1933, C. Todd, A. E. Borton, F. Koch and W. P. Powers have made certain inventions and have obtained numerous patents, and WHEREAS, the said C. Todd, A. E. Borton, F. Koch and W. P. Powers are now working on numerous inventions and are applying for and seeking numerous patents, and WHEREAS, the patents as obtained have been turned over to Associated Patentees, Inc., from time to time without any arrangement being made as to compensation, and WHEREAS, the understanding was that the parties would arrive at the matter of compensation in due time, and WHEREAS, Associated *147 Patentees, Inc., have licensed certain patents and inventions to others, and are obtaining certain royalties from time to time, and WHEREAS, almost the entire income of Associated Patentees, Inc., consists of royalties received from licensing others to use these patents and inventions, and WHEREAS, a verbal arrangement was made earlier this year to the effect that the Associated Patentees, Inc., would pay to each C. Todd, A. E. Borton, F. Koch, and W. P. Powers, 20% of all royalties received for the use of the patents and inventions turned over by them since January 14, 1933, to Associated Patentees, Inc., and WHEREAS, it is thought wise, because of the volume of business being done, and for other reasons, to reduce the whole arrangement to writing. NOW THIS CONTRACT WITNESSETH: That in consideration of one dollar, and other good and valuable considerations, the receipt whereof is hereby acknowledged, and in consideration of the use of numerous patents and inventions as listed on attached Schedule A, and in further consideration of the promise on the part of C. Todd, A. E. Borton, F. Koch and W. P. Powers to keep such patents and inventions current in so far as they can do so, *148 and in further consideration of the promise on the part of C. Todd, A. E. Borton, F. Koch, and W. P. Powers to turn over any inventions they may make to the Associated Patentees, Inc., the Associated Patentees, Inc. this 31st day of December, 1940, agrees to pay to each of the said C. Todd, A. E. Borton, F. Koch, and W. P. Powers, as royalties for the use of the patents and inventions turned over to Associated Patentees, Inc. since January 14, 1933, as shown in Exhibit A attached, an amount of cash equal to twenty (20) per cent of all royalties received by the said Associated Patentees, Inc.; and Further, the Associated Patentees, Inc. agrees to pay to each of the said C. Todd, A. E. Borton, F. Koch and W. P. Powers as royalties for the use of the patents and inventions turned over to the Associated Patentees, Inc., since January 14, 1933, as shown on Exhibit A attached, and as royalties for the use of patents and inventions to be turned over by the said C. Todd, A. E. Borton, F. Koch, and W. P. Powers, to the Associated Patentees, Inc. in the future, an amount of cash equal to twenty (20) per cent of all royalties that Associated Patentees, Inc. hereafter receives. This contract *149 shall continue in full force and effect during the entire life of said patents and inventions, including the life of any patents and inventions that may be turned over to the Associated Patentees, Inc., in the future. ASSOCIATED PATENTEES, INC. By /s/ A. E. Borton, President /s/ C. Todd /s/ A. E. Borton /s/ W. P. Powers Secretary /s/ Frederick Koch /s/ W. P. Powers Prior to the end of 1940 petitioner paid $42,209.76 to the four individuals in equal amounts. Opinion The controversy revolves around the question of the proper treatment for tax purposes of the sum of $42,209.76 received by the petitioner from the U.S. Tool Co., Inc. in the taxable year. On its 1940 income and declared value excess profits tax returns the petitioner deducted that sum as an ordinary and necessary expense paid by it as royalties to four individuals, its stockholders, Messrs. Borton, Koch, Todd and Powers, in equal amounts. Section 23 (a) (1), Internal Revenue Code. The respondent disallowed this deduction and so determined the contested deficiencies. The determination of fact upon which these deficiencies apparently rest is that the petitioner, prior to the taxable year, bought the legal and equitable *150 title to certain patents, the consideration for which was 80 percent of the royalties received by petitioner for the use of those patents and that those royalties received by petitioner from the U.S. Tool Co., Inc. in the taxable year then constituted gross income to petitioner. The petitioner argues alternatively that the above-mentioned sum of $42,209.76 was improperly included in its income for the tax year since it was received by petitioner as trustee for the four individuals, stockholders of petitioner, to whom it was paid by petitioner, but if properly includable in its income for the tax year it was deductible by petitioner as an ordinary and necessary expense in the form of royalties paid by it in the tax year. Petitioner takes another alternative position and urges that, in any event, it is entitled to a dividends paid credit for the amount of that payment to its stockholders under section 27, Internal Revenue Code. It also contends that it was not a personal holding company within the purview of section 501 of the Internal Revenue Code. Of course the petitioner has the burden of showing error in the determination of respondent. The least that can be said of the evidence *151 here is that it is incomplete, conflicting and unconvincing on the pertinent questions. None of the assignments of the patents by the individuals to petitioner were put in evidence. It is admitted that the assignment of twenty patents on January 16, 1933, to petitioner by the four individuals who owned them, included both legal and equitable title. It is likewise conceded that the patents transferred by these four individuals to petitioner subsequent to January 16, 1933 on their face were just as absolute and unconditioned. The royalties with which we are concerned were paid on these later patents. It is argued, however, that the four transferors reserved the beneficial interest and equitable title in the last mentioned patents by an oral contract. It may be that such a title could have been reserved in those later transfers. F.L.G. Straubel, 29 B.T.A. 516. But this record is woefully wanting in convincing evidence supporting such a reservation. It is true that the oral testimony of Powers and Todd attempts to sustain this alleged fact. But none of the contracts between petitioner and the U.S. Tool Co., Inc., all of the stock of both of which companies *152 was owned by the four individuals, evidence in any way a beneficial interest in any other than petitioner. In fact, all the indications from those contracts are that petitioner was dealing with the patents as their absolute owner. The payments to be made thereunder to petitioner for the license are called "royalties" and are those made payable to petitioner. Although obviously possessing the power continuously to do so, no change or modification in such contracts was ever made conforming these contracts to the position the petitioner now takes. Although we do not know the date of assignment and transfer of any of the patents the royalties on which are here involved, the substance of the testimony is that they were assigned from time to time after January 16, 1933. But there is no written evidence of the existence of the reservation of equitable title in any of them until the minutes of the meeting of directors of petitioner bearing date of December 16, 1940. The minutes of that meeting, upon which petitioner relies, purport to reflect an event long after its occurrence, and at a time when its tax consequences may have been in mind. It was there attempted to correct the resolution *153 of September 1, 1939. That earlier resolution contradicts the position of petitioner here. It authorized the execution of a modified contract between petitioner and U.S. Tool Co., Inc. for the use of the patents. In so doing it expressely denominated as "royalty" the payments due thereunder to petitioner for the license so granted. Then "as partial compensation" to the four individuals "for patents, inventions, ideas, etc. turned over to this Company by [the individuals] * * * since the incorporation of this Company * * *" it provided that one-fifth of the cash royalties received by the petitioner was "to be paid over to each of said individuals * * *." No intimation of the reservation by the individuals of any beneficial interest in the patents is apparent. In view of the fact that all of the stock in petitioner was owned by the four individuals equally no ready explanation occurs to us as to why any consideration should have been paid by the petitioner for these patents. Tax consequences, however, are determined by what is done not by what might or should have been done. Weiss v. Weiner, 279 U.S. 333. It was about the date of this earlier resolution *154 when the commercial returns to petitioner on some of these patents became substantial and the value of such patents therefore possible of approximation. The oral testimony of at leat one of the two of the original owners who testified stated that the absence of this condition of determination of commercial value prevented the fixing of a value for the patents when assigned to petitioner. Moreover, following the minute entry of December 16, 1940 purportedly correcting this earlier resolution, on December 31, 1940 the petitioner and the four individuals executed a "contract," which incorporates the corrected minute entry of December 16, 1940. Not only were the latter minute entry and "contract" made long after the fact they purport to evidence but the "contract" contains these two significant clauses which, we think, contradict the correction upon which petitioner relies and support the determination of respondent. The contract provides: WHEREAS, the patents as obtained have been turned over to Associated Patentees, Inc., from time to time without any arrangement being made as to compensation, and WHEREAS, the understanding was that the parties would arrive at the matter of compensation *155 in due time, and * * *. It is true that in March 1942, some time after the present controversy arose and expressly referring to its existence, the petitioner and the four individuals executed two other instruments designated therein as "Declaratory Statement" and "Agreement and Clarifying Statement Re Ownership and Licensing of Patents, Inventions, Ideas, Etc." Both these instruments attempt again and in greater detail to set out the relationship between the petitioner and the four individuals with reference to these patents. In view of all the circumstances, however, these instruments have little or no evidentiary value. We conclude that petitioner has failed to sustain its burden of establishing error in respondent's determination. In fact, we think this record supports that determination. From this conclusion several consequences necessarily follow which dispose all the issues except the last. The transfers to petitioner of the patents here involved must necessarily have been either (1) transfers of a mere license to use; (2) transfers of title without expectation of payment and consequently contributions to capital by the four stockholders of petitioner; (3) transfers of the *156 legal title with reservation of the equitable ownership by the four individuals or (4) transfers of legal and equitable title with expectation of payment of a consideration therefor, the amount to be determined later. Facts established and set out in our findings fail to justify, in our opinion, a finding that the transactions fall within either of the first three classes mentioned. Respondent has determined the transactions to be of the fourth class mentioned and we think that determination not negatived but supported by the record. It follows that the payments received by petitioner from the U.S. Tool Co., Inc. must be held to represent royalties paid it for use of its patents and consequently income to it and the $42,209.76 paid over to its four stockholders and former owners of the patents not to be royalties deductible by petitioner as business expenses nor dividend distributions for which it is entitled to credit under section 27, I.R.C., but payment of the consideration for assets acquired, such payment not being subject to reflection by it in computing net taxable income. The last issue is whether petitioner in 1940 was a personal holding company. The petitioner in 1940 *157 filed a personal holding company return. The petitioner was a business corporation. Its capital stock was wholly owned by four stockholders. All of its gross income was "royalties" received under an agreement granting the exclusive use of patents and trade-marks which it owned. It meets all the tests of a holding company within the meaning of the Revenue Acts. Internal Revenue Code, §§ 501, 503. Cf. Commissioner v. Affiliated Enterprises, 123 Fed (2d) 665; cert. denied, 315 U.S. 812. On this issue the petitioner fails. The discussion of petitioner in reference to depreciation deductions disallowed by respondent is not relevant to any issue submitted here. Decision will be entered for the respondent.